## RHODA A. GEIGER v. A. C. PAYNE, Appellant.

**Breach of Promise and Seduction:** PLEADING. In an action on breach of promise to marry, allegations of seduction by means of such promise may be pleaded merely in aggravation of damages, and do not subject the complaint to the charge of embracing two causes of action.

DAMAGES. A verdict for sixteen thousand dollars for plaintiff in an action for breach of promise to marry, is not excessive where defendant is shown to be worth from fifty thousand to seventy-five thousand dollars, and the evidence tends to show that plaintiff, relying upon such promise, allowed him to seduce her.

SAME. An instruction that the jury on the trial of an action for breach of promise to marry might consider, in estimating plaintiff's damages, the money value of the advantages of a home and domestic establishment of a kind suitable to the wife of a person of defendant's situation in life, is not erroneous where defendant is shown to be worth from fifty to seventy-five thousand dollars

SAME. Letters couched in affectionate terms, written by defendant, to plaintiff in an action for breach of promise to marry, telling her about his business affairs and explaining his relations with another woman, are admissible where defendant denies the promise, and may be considered by the jury as bearing upon the purpose with which such statements are made.

**Appeal:** EXCUSING JUROR. Excusing a juror on a challenge for cause is not error where the juror's daughter had married a relative of one of the parties, and the juror had talked with such son-in-law about the case, particularly where no prejudice therefrom is shown to have resulted to the complaining party.

WAIVER OF OBJECTION. A party will not be heard to complain on appeal of the admission of evidence over his objection on the trial, where after its admission he opposed a motion to have it stricken out, and the jury instructed to disregard it.

MISCONDUCT OF COUNSEL. A judgment will not be reversed because of counsel's denunciation of defendant's conduct and character. in his argument to the jury, if the proof tends to sustain, though it may not actually establish the truth of the charges so made: It is not intended by this to justify personal abuse by counsel, but to hold that in this case, upon consideration of the whole record, there was no abuse for the sake of abuse, and that the discretion of the court in its control of argument by counsel was not abused.

WAIVER BY PLEADING OVER. . Where a pleading is amended so as to make it good against a sustained demurrer and issue is joined on the amendment, error in sustaining the demurrer is waived. (See chapter 96, Acts Twenty-fifth General Assembly).

ADMISSIONS OF DEFENDANT. In an action for breach of promise to marry, defendant's statements to a third person that he was between two fires, and did not know whether to marry plaintiff or another woman, was admissible to show that he had a marriage with plaintiff under consideration, though made after the alleged breach of promise.

Continuances. Refusal of continuance on account of the death of defendant's chief attorney was proper, where the cause had been several times continued at defendant's instance and the illness of the attorney, and had existed for such a period, that his presence at the trial ought not to have been expected.

*Appeal from Ringgold District Court.*—Hon. · H. M. Towner, Judge.

Friday, December 11, 1896.

ACTION for breach of promise to marry. Verdict and judgment for plaintiff, and the defendant appealed.— *Affirmed.*

*McIntire Bros. & Jamison* and *Reynara Bros.* for appellant.

*Henry & Spence, E. W. Curry,* and *A. B. Cummins* for appellee.

GRANGER, J.—I. To the petition there was a substituted answer in five divisions. A demurrer was filed to all except the first division, and sustained as to the third, fourth, and fifth divisions, and the parties are in dispute as to whether it was sustained as to the second division; and, as we view the record, it is not important that we settle the dispute. That there is danger of misapprehension from the record is true, for there are no less than seven abstracts filed, and in some respects they obscure, rather than make clear, disputed questions. Error is assigned on the ruling of the court in sustaining a demurrer to the answer, and counsel are in contention as to what can be considered under the assignment. After the ruling on the demurrer to the substituted answer, as above stated, which was on April 26, 1895, it appears that, on the same day, defendant filed an amendment to the fourth and fifth divisions of his substituted answer, and immediately following the amendment, in the abstract of appellant, is the following: "And, on the —— day of April, the court, being fully advised in the premises, sustains the plaintiff's demurrer to defendant's substituted answer as amended, to which ruling the defendant at the time duly excepted." It next appears that on the first day of May, 1895, the defendant amended the fourth division of his substituted answer, and the first division of his amendment to the substituted answer, by stating that the matters and things therein set up are pleaded in mitigation of damages. To the answer, a reply was filed, and the pleadings thus made seem to have presented the issues of fact afterwards tried.

The questions argued on demurrer are as to the rulings on the demurrer to the substituted answer. The demurrer to the "substituted answer as amended" is not set out, and it seems to have been to the entire

answer, from the language of the abstract; and it was sustained. Of course, we cannot consider it, for we do not know what it is, and no question seems to be presented as to it. The ruling held the entire answer insufficient. The amendment following made good the first and fourth divisions of it, to which there is a reply. Such a state of the record waives, or renders it unnecessary to pass on, the ruling of the court on the demurrer to the substituted answer. The substituted answer, with the amendment thereto, supplanted, for the purpose of forming issues, the original substitute, as it was assailed by demurrer; and the last ruling on demurrer became the conclusive one on the sufficiency of the answer. Some phases of the argument lead us to think that neither party takes our view of the effect of the record. The condition of the record, as we have stated it, is taken from the abstracts of both parties; and, if we are right as to the record, we think there is little doubt of the correctness of our conclusion.

II. The petition, in addition to the averments as to a promise of marriage, and a breach thereof, shows the fact of sexual intercourse between the parties, and it is averred "that said seduction and sexual intercourse was brought about and accomplished by said defendant under and by virtue of said contract of marriage. The plaintiff, relying upon said contract of marriage as herein set out, yielded up her virtue to said defendant, and was, on account thereof, seduced by him." Defendant moved the court to require the plaintiff to separate the causes of action into counts, so as to present separate claims for the breach of promise, and for the seduction, which the court refused. It is plaintiff's claim that only a cause of action for breach of promise is pleaded, and that the fact as to seduction is only in aggravation of damages, and this is the view taken by the district

court in its ruling and instructions. Appellant contends that, although the fact of seduction may be used for the purpose of corroboration in a case for breach of promise, it cannot be used to aggravate the damage. The authorities are not in entire harmony on the subject, but they largely preponderate in favor of the court's ruling. Mr. Hale, in his late work on Damages, in the chapter on "Breach of Marriage Promise," says: "In estimating the damages, the jury may take into account the fact that plaintiff had been seduced by defendant, as tending to increase the mortification and distress suffered by her. If by reason of an imprudent and criminal act, in which both participated, she is brought to such a state that the suffering occasioned to her feelings and affections must necessarily be increased by his abandonment, then that would be but an inadequate and poor compensation which did not take it into account. The seduction must have been accomplished by means of the promise of marriage." The text is supported by numerous authorities. It will be seen that the allegations of the petition, as we have quoted them, show that the seduction was accomplished relying on the promise of marriage. In *Bennett v. Beam* (Mich.) 4 N. W. Rep. 8, is the following language: "That the act of seduction under a promise of marriage should go a great ways with the jury in estimating the damages ought to be true, both in law and fact. In many cases, loss sustained from a breach of the agreement to marry may be but slight, indeed, but never can this be the case where the lifelong blight which seduction entails enters into the case. Respectable society inflicts upon the unfortunate female a severe punishment for her too confiding indiscretion; and which the marriage would largely, if not wholly, have relieved her from. The fact of seduction should, therefore, go a great ways in fixing the

damages, as in no other way could amends be made the plaintiff for the injury she sustained, or the defendant be properly punished for his aggregated offenses.  It would seem also to be in full accord with the sense of justice implanted in the heart of every high-minded person, and therefore within the reason of the common law."   The case cites *Sheahan v. Barry*, 27 Mich. 117.  See, also, *Bird v. Thompson* (Mo. Sup.) 9 S. W. Rep. 788; *Daggett v. Wallace* (Tex. Sup.) 13 S. W. Rep. 49; *Tyler v. Salley* (Me.) 19 Atl. Rep. 107; *Osmun v. Winters* (Or.) 35 Pac. Rep. 250.   In 2 Am. & Eng. Enc. Law, under the proper subject, it is said: "*In aggravation of damages*, it may be proved in some states, if it is alleged in the complaint, that, by means of his promise, the defendant seduced her."   Some twelve states are cited as sustaining the rule.   It is also stated in the text that "in other states, on the ground that the plaintiff must have been a *particeps criminis* to the seduction, and therefore could not complain of it, the jury cannot consider it."   Three states are cited as sustaining this rule.   Both upon reason and authority, we concur in the rule of permitting such a fact to be shown in aggravation of the damage.

III.   The cause was tried at the April term, 1895, at which term a motion for a continuance filed by defendant was overruled, of which ruling complaint is made.   The grounds of the motions are, that but a short time before the term, about a week, one M. A. Campbell, who had been the attorney for defendant for many years, and who had almost the exclusive management of this case, died, leaving the responsibility to associate counsel.   A counter-showing makes it appear that the cause had been some three times continued at the instance of defendant, and that the sickness of Mr. Campbell had been of such a nature, and had existed for such a time,

that reliance should not have been placed on his ability to be able to take charge of the trial at the April term. It is clearly a case in which there was no abuse of discretion. In fact, we think it was judiciously exercised.

IV. One John N. Brown was a member of the regular panel of jurors, and was excused for cause, on a challenge by plaintiff, and error is assigned on the ruling. The most direct claim of prejudice because of the exclusion of this juror is, that it necessitated calling a juror from the bystanders to complete the trial panel; but there is nothing to show that the juror so called was not acceptable and a good juror for the purposes of the trial. The examination showed that a daughter of the excused juror had married a relative of the defendant, and that the juror and the son-in-law had talked about the case, and, upon the whole, the court concluded to excuse him, and we think it not an unfair exercise of discretion. Even if it would not have been error to overrule the challenge, still we should not interfere, in the absence of a showing of prejudice. *Sprague v. Atlee*, 81 Iowa, 1.

V. It appears that defendant was a widower, residing at Mt. Ayr, in this state, and that the plaintiff was a lady some twenty-eight years of age, who came to Mt. Ayr from Newark, Ohio, and had resided there since early in 1892. The last of February, 1893, she returned to Newark, Ohio. Before leaving Mt. Ayr, she met with the defendant, and a correspondence was talked of, and afterwards had; and the letters from the defendant are, in part, in evidence. The correspondence resulted in the parties meeting at Chicago, at the world's fair, and later, in June, 1893, defendant visited plaintiff at her home, in Ohio. It is plaintiff's claim that the marriage was talked of in Chicago, and the agreement fully completed when the defendant visited her in Ohio; and it is her further

claim that her seduction was accomplished during his visit in Ohio, and because of the contract of marriage. Defendant insists that there was no agreement to marry, and on the trial he sought to make it appear that the plaintiff was highly educated, a music teacher, accomplished, and an adventuress. It is also claimed that while defendant is shrewd in the arts of money making, and has succeeded in that respect, he is uneducated, a very ordinary man in other ways, and was just the man for such a woman to influence. The letters in evidence are couched in very affectionate language. In the letters are references to a Miss Beal, at whose rooms defendant met plaintiff, and the references are in the way of statements or explanations of matters between defendant and Miss Beal. In the letters are statements as to his business, such as that "the banks are closed, and all business men come to me, and the farmers of Ringgold county have to pay for the whistle." It is also stated that he made "two hundred dollars yesterday." It is thought that permitting such parts of the letters to go to the jury was error, but we think not. It was proper for the jury to consider the reason for writing to the plaintiff, telling her about Miss Beal and about his business. Taking the general tenor of the letters in connection with the parts as to which complaint is made, and one cannot be in doubt as to the purpose of the statements thought to be immaterial. We think the letters, entire, were properly in evidence.

VI. One Bevis was a witness for plaintiff, and testified as to his having conversed with defendant about plaintiff, and his intentions as to marrying her. He was asked if he had any conversation with defendant with reference to Miss Beal, and which of the two he ought to marry. Under objection, he was permitted to answer, and the ruling is thought to be erroneous. The answer shows the materiality of the

evidence. It discloses that defendant said he was "between two fires"; that plaintiff would make him a better wife; but that he was not yet ready to get married, as his wife had only been dead a short time. Such testimony was admissible on the question of the promise to marry plaintiff. Of course, it does not show a promise, but it shows that he had the subject under consideration. Other witnesses were permitted to detail what defendant had said about plaintiff, and his purposes toward her. It appears that he told one man that he would marry plaintiff if he knew that he (the person addressed) had not had intercourse with her. To another he said he was going to make a second visit to Ohio, to see whether the plaintiff "had been tampered with;" and he accused the witness so testifying of having been too familiar with her. It was not error to admit such testimony. It was proper to be considered in connection with his letters to and visits and conduct with plaintiff on the question of a marriage engagement. These conversations and statements were after the time, it is said, the engagement was made. It is said by defendant that they were after the breach, if there was one, and that is a reason urged against the admissibility of the testimony. The testimony is none the less competent or material if the statements were made after the breach than if made before. There might be a difference in their value as evidence, but they are admissions or declarations of a party, and were properly put in evidence for what they are worth.

VII. It seems that a suit was commenced on this same cause of action, and dismissed at the October term, 1894, and this suit was commenced the same day. In the other case, defendant filed, under oath, an application for continuance, reciting therein what he expected to prove by witnesses residing in Ohio, then unknown to him; the facts therein stated being

strongly against the reputation and character of the plaintiff. On the trial, the motion was offered by plaintiff, and admitted in evidence against objections, and it is said that the court erred in its ruling. Later in the trial, the plaintiff's counsel moved for leave to withdraw the motion as evidence, and not have it considered by the jury; and the court sustained the motion, under objections from defendant. In making the objection to the withdrawal, it is said that, having read the motion to the jury, and getting the effect of the evidence, they could not withdraw it. It is true, the motion was before the jury; and if it be conceded that its effect, as evidence, could not well be avoided, still the query remains: What was the object of the objection to a withdrawal of the evidence, and an effort to defeat its effect? The withdrawal could not certainly make it worse for the defendant. If it was withdrawn, defendant would then be in a position to take advantage of a record showing the admission and the withdrawal, while now he is in a position of asking that evidence, which he claims to be improper, shall remain for the consideration of the jury, rather than to have an order forbidding its consideration. Undoubtedly, the thought was that prejudicial error would more clearly appear without than with the withdrawal. We think that when a party, for any purpose, desires in the record evidence that he thinks improper, rather than have it stricken from the record, he is not in a position to complain because of its admission.

VIII. There are complaints as to the instructions given. Some of them are disposed of by our holding as to the seduction being properly pleaded in aggravation of damages in the action for a breach of promise. The following is the fifth instruction: "As to the third essential, to-wit, the damages, you are instructed: If you find the contract as stated, and the defendant's

breach and refusal to perform, the plaintiff is entitled
to damages, unless defendant justifies as hereinafter
stated, to be measured by the following considerations:
In determining what sums of money would reasonably
indemnify and compensate the plaintiff, the jury may
consider the disappointment of her reasonable expec-
tations in said marriage, and inquire what she
has lost by her disappointment, and for that
purpose consider, among other things, what
would be the money value or worldly advantage of a
marriage which would give her a permanent home,
and the advantage of such a domestic establishment
as would be suitable to her as the wife of a person of
the defendant's estate and station in life; and, in this
connection, the defendant's reputed wealth, as
admitted of record, may be considered by the jury.
The jury may also consider whether her affections
were, in fact, implicated, and whether she had become
attached to the defendant; and, if such was the fact,
the wound and injury to her affections would be an
additional element in the computation of her damages.
The jury may also consider whatever mortification,
pain, or distress of mind she suffered, resulting from
the defendant's refusal to marry her.  The jury may
consider, also, whatever resulting ill health directly
consequent upon the defendant's refusal to marry the
plaintiff, if any is shown, and allow the plaintiff such
additional reasonable compensation therefor as is
justified by the evidence.  And if, while the par-
ties were mutually promised in marriage, and
intending and expecting marriage, the defendant
solicited, in consideration of such intention and
expectation, and the plaintiff permitted, in considera-
tion of such expectation and intention, sexual inter-
course with her, these facts may be considered by the
jury in computing damages, so far as they tend to
aggravate and increase the disgrace, disappointment,

m rtification, pain or distress of mind which she has suffered by reason of the defendant's breach of contract." The instruction presents the law in so far as it attempts to do so. The complaints are that it tells the jury that the plaintiff would have acquired "a permanent home," and the advantages of "a domestic establishment." The admitted facts justified such a conclusion. A stipulation shows the reputed wealth of the defendant to be from fifty thousand dollars to seventy-five thousand dollars, and it appeared without dispute that he had a good home. The court told the jury that it could consider her reasonable expectations in said marriage, and enumerated, as among such expectations, the fact of a home and the advantages of a domestic establishment. It is thought that the instruction gave the jury to understand that it could estimate the damage on the basis of her contingent right in case she survived the defendant as his widow, but we see nothing in the instruction to justify the thought. The elements of recovery, as specified, are different and distinct from those of a distributive share to a widow. There are some other complaints as to the instructions, but they are without merit, and consist in attaching importance to detached words or a sentence that, when considered as they should be, with other parts, properly present the law of the case.

IX. It is thought that the motion for a new trial should have been sustained. This, with the claim that the verdict is contrary to the weight of the evidence, and is the result of passion and prejudice, may be noticed together. The three claims go to the sufficiency of the evidence. There is a conflict of evidence, but there is no room for doubt that it was a question for the jury, and its verdict is conclusive. It is better that we do not attempt to elaborate the evidence. It could not well be done in the limits of an opinion. There does not seem to

be any way to reconcile the conduct of the defendant, except that he sought the plaintiff as a wife. It is consistent with that fact, or it establishes, conclusively, his villainy. If he sought her as a wife, there can be no doubt from his conduct, when with her and towards her, that the engagement was made, and then broken. If made and broken, the question of a justification in so doing, because of her character, was left, by clear instructions to the jury, under evidence so in conflict that its finding is conclusive. The judgment is for sixteen thousand dollars, but we do not regard it, in view of the defendant's wealth, and the great wrong inflicted on the plaintiff, in her seduction and betrayal, as excessive.

X. A serious complaint is made as to the argument of counsel for plaintiff to the jury, and the grossest of misconduct is charged. On oral argument we were impressed that counsel had so far overstepped the bounds of propriety as to justify a reversal of the case. It did not seem that such statements could have support in the record, so that, with the latitude for argument, the discretion of the district court could shield the verdict. A familiarity with the record has changed our conclusion. Some of the language of counsel seems to be of no other significance than personal abuse. It dealt with the defendant as a usurer; as unscrupulous in methods and means to make money; as avaricious, cold, cruel, and treacherous. The charges were amplified by denunciations and comparisons. To one not acquainted with the record it would seem strange that such a case could present a line of evidence to warrant such language, or even afford a shield for counsel in the use of it. With a careful review of the record, we find few, if any, statements in the argument towards which the evidence does not tend to sustain as a conclusion. It must be understood that we only deal with the tendency

of the proofs, and not what is established. In the letters written by defendant, he was boastful of his money, and of his business accomplishments and methods. He was extravagantly profuse in his expressions of love for the plaintiff, and gave expression to thoughts and purposes which, in the absence of a purpose to make plaintiff his wife, which purpose he denies, went far to justify what was said of him in some of the particulars. We think it is not to be said that counsel might not have believed that the evidence proved the charges made. Defendant was a witness, as well as a party, and his conduct and character were involved in the investigation. That counsel might have gone somewhat to the extreme of his privilege does not necessarily warrant us in interfering with the discretion of the district court. We incline to the view that the discretion was fairly exercised. We have not quoted any of the language thought to be objectionable, because most of it is better omitted from than included in an opinion; and besides, the particular language could not well be understood in its relation to the case without presenting more or less of the record. Our conclusion from the whole record is that the judgment should be, and it is, AFFIRMED.

SUPPLEMENTAL OPINION ON RE-HEARING.

SATURDAY, MAY 29, 1897.

PETITION for re-hearing.—*Overruled.*

PER CURIAM.—In the opinion this language is used in considering complaints made as to the misconduct of counsel in argument: "Some of the language of counsel seems to have been of no other significance than personal abuse. It dealt with the defendant as a usurer; as unscrupulous in methods and means to make money; as avaricious,

cold, cruel, and treacherous. The charges were amplified by denunciations and comparisons." The reference in the quotation to "personal abuse" should not be construed as a conclusion that such was its purpose or effect; nor should the language quoted, nor other language in the opinion, be construed as justifying personal abuse in argument by counsel. We designed no more by the language used than this: that some of the language, by which defendant was denounced in the manner stated, disconnected from much of the record, seemed to have no other significance than personal abuse, but that, in view of the disclosures by the record, because of which the character, conduct, and habits of the defendant became proper matters for comment and consideration, the inference of personal abuse was unwarranted. The control of counsel in this respect is, within the limits of a proper discretion, invested in the trial court. The most we have said in this case is that such a discretion was fairly exercised, in view of the record, which seldom has a parallel in judicial procedure. The petition for a re-hearing is OVERRULED.