LOTTIE LAUER, Appellee, v. BEN BANNING, Appellant.

**Breach of promise:** EVIDENCE: ERRONEOUS EXCLUSION: EFFECT. In a breach of promise suit in which plaintiff testified to the proposed marriage as of a certain date and facts tending to show acceptance, a contract between the parties relating to plaintiff's employment as housekeeper, and in which she expressly waived all claim for damages growing out of any wrong done her by defendant, and that the expressed consideration for her services should be accepted as full settlement of all future claims of any kind growing out of their relation, was admissible on the question of her credibility, irrespective of its legality; and where the court in excluding it stated that neither the instrument nor any of its terms were admissible, the error in the ruling was not cured by the fact that its contents was largely presented to the jury by the examination of witnesses.

**Same.** Evidence that defendant in a breach of promise suit raped the plaintiff after the alleged promise was admissible as a part of the history of the case, although no damage was asked on account thereof.

**Same:** INSTRUCTION. Proof of seduction is admissible as corroborative of a claim of promise of marriage, but proof of rape is not; and where plaintiff in a breach of promise suit had testified to forcible violation of her person, and there was evidence of subsequent seduction, the court should have distinguished between the crimes giving proper rules for the guidance of the jury.

**Evidence:** PRIVILEGED COMMUNICATIONS. Neither an attorney nor a

4 physician can testify to communications made in professional confidence when called by the party adverse to the client or patient, unless the privilege is waived; but if the privilege has been waived exclusion of the evidence is not prejudicial where the party himself testified to the communication.

**Breach of promise:** INSTRUCTIONS. Where there was evidence in a
5 breach of promise suit in support of the defenses that plaintiff was unchaste. and affected with a loathsome disease, an instruction authorizing recovery by plaintiff notwithstanding the same was erroneous.

**Same.** An instruction in a breach of promise action to the effect
6 that the woman loses the man, not as he might have been been, but as he should be under the proven circumstances, is uncertain in meaning and erroneous.

**Same.** An instruction which authorizes a finding of a promise of
7 marriage from plaintiff's own self-serving declarations is erroneous.

**Breach of promise:** EVIDENCE. Writings indicating an attempt by
8 defendant to manufacture testimony, or as constituting an admission of his improper relations with plaintiff, are admissible against defendant in a suit for breach of promise.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

MONDAY, NOVEMBER 23, 1908.

ACTION for breach of promise of marriage and for seduction. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Clark & Byers* and *Noland & Brackett,* for appellant.

*O. S. Franklin* and *Mills & Perry,* for appellee.

DEEMER, J.—Defendant is a farmer living upon a farm some seven miles west of the city of Des Moines. He is a widower about forty years of age and has one child, a daughter about fourteen years old. Plaintiff is

a grass widow, having twice been married and as many
times divorced.  She claims in her petition and introduced
evidence to show, that some time in the year 1903 defend-
ant promised to marry her, and upon the strength of such
promise she went to his house and lived and cohabited with
him as if they were married, and that in the year 1906
defendant practically drove her from his house and refused
to comply with his promise.  All this is denied by de-
fendant, although he admits that he employed plaintiff as
his housekeeper, that she served him in that capacity, and
no other, and that she has been fully compensated for her
services as such.  Many other defenses and pleas in miti-
gation were filed by defendant, to some of which we shall
refer during the course of the opinion.  The trial resulted
in a verdict and judgment for plaintiff in the sum of
$2,000.  To reverse this judgment defendant relies upon
many assignments of error—so many that we shall not
have room in the course of an ordinary opinion to notice
all.  Indeed, it is not important that we do so, for many
of the propositions presented are so collateral to main
points that they are not regarded as controlling, and, in
view of the result reached, some need not be considered,
as they are not likely to arise upon a retrial.  We shall
only notice such of these matters as are deemed con-
trolling and such as are likely to be troublesome should
the case be retried.  The substance of plaintiff's testimony
was that she first met defendant at a labor employment
bureau in Des Moines in the year 1902, and engaged with
him to do his housework at an agreed compensation.  The
terms of this agreement are somewhat in dispute, and it
is not material that we settle this conflict.  It is enough
to know that she went to defendant's farm and undertook
her duties as housekeeper, but for some reason did not
remain longer than two weeks, when she returned to Des
Moines and sought other work there.  In the fall of the
year after she first met him, defendant, according to her

testimony, again sought her out in Des Moines, talked to
her of marriage, promised to build a new house on his
farm for her, and told her if she would return and do his
housework he would pay her the same wages as during
the previous year. She also testified that she then and
there virtually accepted his promise of marriage, and that
defendant then said he could not marry her at once because
of some trouble he was having with a former housekeeper,
and that he could not marry her until this trouble was
settled. It is claimed that, pursuant to these promises
and agreements of defendant, she (plaintiff) returned to
defendant's farm and resumed her duties as his house-
keeper. She also testified that, within a few days or weeks
at most after her return to the farm, defendant by force
and against her will, and notwithstanding all resistance
on her part that she could offer, violated her person and
accomplished her defilement, and that thereupon, at her
urgent demand and request, defendant brought her back
to Des Moines, where she stayed for a week or two, when
defendant again sought her out and renewed his promises
of marriage and to build a new house and induced her to
return again to his home. She further claims that upon
her return this third time she resumed her work as house-
keeper, and also, because of her engagement of marriage,
she immediately began living and cohabiting with the de-
fendant as his wife "in everything but name." The testi-
mony further shows that she time and again requested of
defendant that he marry her, but that he as often put her
off, until finally it was agreed, in 1904, that she should
go to her mother's home in St. Louis, where he (defend-
ant) would meet and marry her, and that she went to St.
Louis as agreed, but that defendant never came. Plain-
tiff also testified that upon her return from St. Louis de-
fendant again sought her, and under "the mirage of mar-
riage" again induced her to go back to the farm and live
with him, which she says she did until the early part of

the year 1906, when defendant repudiated his engagement and drove plaintiff from the farm with a club. This action soon followed.

Defendant, as we have said, denied any promise of marriage, denied that he was guilty of any rape or seduction, pleaded that plaintiff was before the time it is claimed the promise of marriage was made lewd, vulgar and unchaste, that she used vulgar and profane language, that she had been and was then afflicted with a loathsome venereal disease, that she was sick from said disease, that its ravages had made her barren and sterile, and that during the time she claimed to have been engaged to defendant she had illicit intercourse with other men. He also pleaded that plaintiff during the time of the claimed engagement persistently tongue-lashed, scolded, cursed, and threatened him, circulated false reports regarding him, and that he could not live with her in the marriage state without great danger to his health and body. These matters were pleaded both in mitigation and as a complete defense, and testimony was adduced in support of most, if not all, of them. It will be observed plaintiff claims that a promise of marriage was made by defendant before she (plaintiff) returned to work for him a second time; that is, in the fall of the year 1903.

It is a little doubtful from the testimony as to whether or not plaintiff claims to have accepted defendant's proposal before returning to the farm or not, but for the purpose of discussing the first proposition we shall dismiss this as immaterial. The point is that, according to plaintiff's testimony, defendant, to induce her to return, proposed to marry her and to build a new house in which they should live after they were married. She says that this was the reason why she returned to the farm. She admitted, however, that defendant said he would not take her back to the farm unless she would sign a contract which would protect him from blackmail or slander; that

he proposed to see a lawyer to find out if such a contract could legally be drawn; that, after seeing his lawyer and finding out that he thought such an instrument might be made, she went to the lawyer's office; and that a contract was drawn, which was then signed. This contract was offered by the defendant as a part of his case, but was rejected by the trial court. It reads in this wise:

This agreement, made and entered into this 9th day of September, 1903, by and between Ben Banning and Lottie Lauer, witnesseth: That whereas the said Ben Banning is a single man engaged in farming in Polk County, Iowa, and whereas the said Ben Banning requires the service of a housekeeper for himself and his employes, and whereas the party of the second part is desirous of taking the said position of housekeeper and cook for the said Ben Banning, and whereas the said Lottie Lauer has theretofore worked for the said Ben Banning as housekeeper and cook, and whereas the said Ben Banning has in every respect deported himself toward the said Lottie Lauer in a legal and becoming manner, and whereas the said Ben Banning by reason of the circumstances under which he is placed, and requiring the need, assistance, and therefore the necessary presence of a woman in his household, and realizing the danger of false, fictitious and manufactured charges that might be and often are made by women under such circumstances: Now, therefore, it is hereby agreed between the parties hereto that in consideration of the employment of the said Lottie Lauer by the said Ben Banning, and in consideration of the money to be paid to the said Lottie Lauer as wages, and in consideration of the home and attendant privileges granted to said Lottie Lauer by the said Ben Banning, it is hereby expressly agreed that the said Lottie Lauer hereby expressly waives all claims for civil damages growing out of any tort or legal action whatsoever, and the consideration mentioned herein from the said Ben Banning to the said Lottie Lauer is hereby accepted by the said Lottie Lauer as full and complete settlement and satisfaction for all claims of any kind whatsoever that may hereafter arise while the said Lottie Lauer shall be in the employ of the

said Ben Banning or any action of every kind growing out of the relationship of the said parties hereinbefore mentioned. And the said Lottie Lauer, recognizing the danger to the said Ben Banning of fictitious and manufactured claims and accusations arising from the situation hereinbefore mentioned, hereby expressly agrees that she will at once report to the said Ben Banning any impropriety committed toward her on the part of any of the employes of the said Ben Banning, and that she will in no case either by insinuation or by formal charge accuse the said Ben Banning of any act of impropriety toward her. And this agreement shall be witness to the fact that the said allegations, if any shall be so made, are false and fictitious, and made for the purpose of extorting money or some other pecuniary advantage. Signed in duplicate by the parties hereto this 9th day of September, A. D. 1903.. B. Banning. Lottie Lauer. Witness: Katherine Brice.

The trial court excluded the contract because it was invalid and opposed to public policy. In our opinion this ruling was erroneous, not because the contract is binding 1. BREACH OF PROMISE: evidence: erroneous exclusion: effect. upon the parties, but because of its bearing upon the issues in the case. No one is claiming that this contract is in itself a complete defense to plaintiff's suit. If that were the claim, we should then have the question of its legality to determine; but, as that is not and was not the position of defendant's counsel, we have to consider the question of its admissibility as a part of the history of the case in its bearing upon the claims of the respective parties. Remembering that plaintiff had testified that at this very time defendant had proposed marriage to her, and that a jury may have found that she had then accepted him, it seems to us that this contract, although invalid and illegal, should have been admitted as bearing upon the truthfulness of plaintiff's testimony and upon her character both as a witness and as a pure and upright woman. It is hardly likely that, if pure and honest, she would have signed such a contract, had she then been under an engagement

to marry defendant, as she claims. At any rate, it was for the jury to consider this in the light of her testimony as bearing upon the truthfulness of her story.

It is said for appellee that this contract was admitted, but the record shows the contrary. It is also contended that most of it was gotten into the record through the examination and cross-examination of witnesses. It is true that some of it was, but the court in its ruling practically said to the jury that neither the contract nor any of its terms were admissible in evidence. This being true, it was in effect a direction not to consider any part which had been read in their presence. Again, it is argued that no prejudice resulted from its exclusion. To this we can not agree. The matter was material, and its exclusion manifestly prejudicial.

After plaintiff had introduced testimony regarding the forcible violation of her person by defendant, his counsel moved to exclude the same. It is true, of course, that 2. SAME. plaintiff asked no damages on account of rape, and that proof of rape has no tendency to establish a marriage contract; but we are inclined to think that the testimony was admissible as a part of the history of the case, its weight being for a jury. To most minds this testimony would tend to indicate that there was no marriage contract either before or after the rape was committed; but, however this may be, the testimony was admissible, and, if the jury had been properly instructed with reference thereto, no harm would have resulted.

Plaintiff claimed in her petition that she had been seduced as a result of the marriage promise, and she asked that her damages be augmented by reason thereof. 3. SAME: instruction. The trial court, in its instructions with reference to this matter of sexual intercourse, gave the following: "Third. If you find as a matter of fact that there was sexual intercourse between plaintiff and defend-

ant, if such is the fact, this can not be considered by you as a basis of a verdict for the plaintiff; but a right of recovery can only be based upon a broken promise of marriage. The fact of such intercourse, however, if such is established by the proof, may be considered by you as bearing upon the question of whether there was a promise of marriage, as claimed, and whether but for such promise plaintiff would have consented to such intercourse; the ultimate question being whether there was an agreement to marry, as claimed." The defendant asked the court to instruct as follows: "Testimony has been offered and admitted in evidence tending to show that some time after September 9, 1903, and within two weeks after said date, the defendant, by force and against the will of the plaintiff, did carnally know and debauch her. As to this evidence, you are instructed that the same can not be considered by you in aggravation of damages, if you find she is entitled to recover; neither can you consider the same in determining as to whether or not the plaintiff did make and enter into the verbal contract alleged by the plaintiff in her petition."

Bearing in mind that plaintiff had testified to a forcible violation of her person, and also to some facts which perhaps tended to show that there was a subsequent seduction, and that damages were claimed in the petition for the alleged seduction, it is manifest that the instruction given by the trial court was erroneous, and that the one asked by the defendant should have been given. We have held that proof of seduction in breach of promise cases is admissible as corroborative of the woman's claim that a promise of marriage had been made and accepted. See *McConahey v. Griffey,* 82 Iowa, 564, and *Beans v. Denny,* — Iowa, —. But we have never held, nor do we think any other court of last resort has ever announced, that proof of rape is corroborative evidence of a promise of marriage. It was important, in view of the issues, for the

trial court, to distinguish between seduction and rape, and to give proper rules for the guidance of the jury with respect to these matters. This it did not do, but, on the contrary, left the jury to find that proof of rape would tend to establish a promise of marriage and to believe that the intercourse testified to by plaintiff was by her consent induced by defendant's promise of marriage. Plaintiff had testified that the first act of intercourse was by force and against her will. Proof of seduction was admissible under the rules heretofore suggested but it is contended that there was no evidence thereof in the case. This is purely a fact question which we need not now determine. It may be said that it is only by the broadest inference that we find any proof of seduction. The court should, in any event, have instructed as to what constituted seduction, as distinguished from sexual intercourse, and left it to the jury to say whether or not there was any seduction.

A witness, who had one time been an attorney for plaintiff, and another, who had been her doctor, were each called by defendant and asked to testify regarding state-

4. EVIDENCE: priv ileged com- munications.

ments made to the one and the result of an examination made by the other. Of course, these matters were privileged, under section 4608 of the Code, and their testimony was inadmissible, unless plaintiff waived the privilege. As to the attorney, she did not do so, for, although she testified to the subject-matter of her conversation with him, this was brought out by defendant's attorneys on cross-examination. As to the doctor, we think she did waive her privilege, and that the doctor should have been permitted to testify. However, it affirmatively appears that the ruling was without prejudice, in as much as the plaintiff herself said that the doctor told her she had a venereal disease. If the doctor had testified that she had, it would have added nothing to the case; and, if he had testified that she did not have it, this would have been of no benefit to defendant.

II.   Parts of instruction No. 19 given by the trial court read as follows:   "If, after carefully considering all the facts in this case and these instructions, you find that there was an agreement to marry between the parties hereto, and that there has been a breach of the same by the defendant, and if you further find that plaintiff has been damaged thereby, you will then determine the amount of her damages. . . . You are not to give an unreasonable or exorbitant sum, but a just, reasonable and fair sum, such as would place plaintiff in as good condition pecuniarily as she would have been if the contract had been fulfilled, and such as you would think from a fair consideration of all the evidence and all of the surroundings that plaintiff should have and that defendant should pay.   In actions of this kind, the jury should not take into consideration the desirability of the defendant as a husband, nor whether the parties would be likely to live together happily or otherwise; that in such case, if there be a breach of promise to marry, the woman loses the husband, not as he might have been, but as he should be, under the circumstances proved."   This instruction can not be sustained. The first part authorizes a finding for plaintiff notwithstanding some or all of defendant's defenses may have been established.   There was testimony in support of most of these, and this part of the instruction is erroneous.   *Quinn v. Railroad,* 107 Iowa, 710; *Christy v. Railway Co.,* 126 Iowa, 428, and cases cited; *Guptill v. Verback,* 58 Iowa, 98.

5. BREACH OF PROMISE: instructions.

The last paragraph of the instruction is difficult to understand.   There is a suggestion somewhere that it was borrowed from Sackett on Instructions, and we find that it was taken from section 26, page 156, the first edition of that work.   There is nothing cited in support of it, and the author seems to be wholly responsible therefor.   It seems to have been omitted from

6. SAME.

the late Brickwood Edition of that work. What is meant by the term that "the woman loses the husband, not as he might have been, but as he should be, under the circumstances proved," is difficult of comprehension. We had always understood that the woman took the man "for better or for worse," and are convinced that even prenuptial promises of reformation are "more often honored in their breach than in their observance." This paragraph, if we understand it, is to the effect that the woman loses the man, not as he might have been, but as he should be, under the circumstances proved. We all know what a man should be, but are sadly cognizant of the fact that few, if any, attain to that standard. More than this, the court instructs that the loss is not of the man as he might have been under the circumstances proved. This, if it means anything, suggests that he would have improved had plaintiff married him, and that this should be considered in fixing damages. It also seems to us that much depends in such cases upon the defendant's desirability as a husband—that is, the defendant as he is and was when the promise was made and broken, and not as he should be—and that it is proper to consider the probability of a happy marriage. If the instruction does not mean what we have suggested, then there is no telling what interpretation a jury may have placed upon it. In any event, it should not have been given.

III. Other instructions are criticised. We need not set them out. Some of them are not as clear as they should have been, and another, the sixth, falls within the rule announced with reference to the first paragraph of the instruction last considered. The fourth instruction left it open to the jury to find an agreement of marriage from plaintiff's own self-serving declarations. This was not intended by the trial court, but the language of the instruction was reasonably susceptible of that construction and should not have been

7. SAME.

given. We need not take the time to point out other faults in some of the paragraphs of the charge. They relate largely to matters of form and to the method of presentation, rather than to substantive rules of law, and consequently it is not important that we go through them one by one.

IV. Other rulings of the court are complained of, and it is strenuously contended that certain oral testimony with reference to the contents of some receipts said to have been seen at one time in the possession of defendant's attorney should not have been received. As we understand the record, there was no error here. It may be that testimony as to certain statements made by this attorney should not have been received, because not then engaged in any employment on behalf of his client, and the record is not very clear about what the attorney was doing with the receipts at the time they were seen by plaintiff and her counsel. Had they, been obtainable, and had they been offered in evidence by plaintiff as a part of her case, they would, after proper identification, have been admissible upon two grounds, either as showing an attempt on the part of the defendant to manufacture testimony, or as an admission on his part that he had had sexual intercourse with plaintiff. The record is a little confused with reference to this, and we indicate our views because of the reversal which must follow.

8. BREACH OF PROMISE: evidence.

For the errors pointed out, the judgment must be, and it is, *reversed.*

EVANS, J., taking no part.