MARGARET MORGAN, Appellee, v. F. J. MUENCH, Appellant.

**MARRIAGE:** Promise to Marry—Breach—Evidence—Sufficiency.
1  Evidence reviewed, and held suffcient to establish a promise of
marriage, the seduction of the promisee, and the subsequent
breach of said promise.

**APPEAL AND ERROR:** Review—Denial of New Trial—Deference
2  To Judgment of Trial Court. It is often as important to see
a witness as to hear what he says; hence the reluctance of the
appellate court to overrule the trial court in denying a new
trial. Applied where the lower court, in denying a new trial,
characterized the defendant's testimony, in part, as rank per-
jury.

**MARRIAGE:** Promise to Marry—Valid as Affected by Invalid
3  Promise. A promise of marriage made by the promisor at a
time ·when he is already married, does not relate forward and
work a nullification of a like promise by the promisor after
he had secured a divorce, especially in view of the principle
of law that an implied promise to · marry may exist from the
conduct of parties.

**MARRIAGE:** Promise to Marry—Breach—Evidence—History of
4, 10, 11 Case—Relation of Parties. In an action for breach of prom-
ise to marry, the mutual conduct of the parties is admissible to
show (a) the history of the case, (b) the relations of the
parties, and (c) the malice of the defendant, even though such
conduct occurred at a time when no valid promise of marriage
could be entered into because the promisor was already married,
the action being based on a promise made by promisor after
he had secured a divorce.

**MARRIAGE:** Breach of Promise—Promise Made During Prohibited
5  Period. A divorcee may, during the year following the securing
of the divorce (during which time remarriage ·is prohibited
[Section 3181, Code Supplement, 1913]), make a valid promise
to marry the promisee after said year has expired.

**SEDUCTION:** Acts Constituting—Married Person. Seduction of a
6  woman may be accomplished by a promise of marriage made
at a time when the promisor, to the knowledge of the woman
seduced, was living in a loveless marriage to a woman desirous

of entering a convent, and between which married persons a divorce was imminent, aided by the previous, continued and concurrent protestations of love and employment of seductive arts by the promisor.

**SEDUCTION:** Reformation—Effect. Reformation of a seduced woman restores her former chaste character and renders her again subject to seduction.

**MARRIAGE:** Promise to Marry—Evidence—Seduction. Proof of seduction is competent as bearing on the question of a marriage contract.

**DAMAGES:** Exemplary Damages—Breach of Marriage Contract—Seduction—Malice. Exemplary damages are recoverable in an action for breach of promise to marry, in connection with seduction, on a showing that defendant's conduct was wanton and in wilful disregard of the rights of plaintiff. A showing of hatred or ill will towards plaintiff is not necessary.

**MARRIAGE:** Promise to Marry—Breach—Evidence—History of 4, 10, 11 Case—Relation of Parties.

**MARRIAGE:** Promise to Marry—Breach—Evidence—History of 4, 10,11 Case—Relation of Parties.

**MARRIAGE:** Promise to Marry—Breach—Damages—Financial Standing of Defendant. The financial condition, earning capacity and reputed wealth of defendant are material in an action for breach of promise to marry, as bearing on what plaintiff has lost by defendant's breach.

**TRIAL:** Verdict—$15,000—Excessiveness—Breach of Promise to Marry. Verdict for $15,000 sustained in an action for breach of promise to marry. Defendant was evasive as to his wealth and earning capacity, but, as an auctioneer, had from 40 to 75 sales per year, from which sales he made from $20 to $40 each. Was successful in business, and at time of trial was worth $40,000. Defendant's conduct toward plaintiff was strikingly flagrant.

*Appeal from Plymouth District Court.*—WILLIAM HUTCHINSON, Judge.

MARCH 11, 1916.

REHEARING DENIED NOVEMBER 17, 1917.

ACTION at law to recover damages for breach of promise of marriage. There was a trial to a jury, and a verdict and judgment for plaintiff for $15,000. Defendant appeals. —*Affirmed.*

*T. M. Zink,* for appellant.

*Addison G. Kistle, Geo. S. Wright,* and *Sammis & Bradley,* for appellee.

PRESTON, J.—The record is a very long one. 49 errors, which take up 14 pages of the argument, are assigned, but they are not all argued. Appellant's first abstract contains 51 pages, but he has filed an additional abstract of 225 pages, and still another short one; and appellant has filed an additional argument; appellee, an additional abstract and an additional argument.

1. MARRIAGE:
• promise to
marry:
breach: evidence: sufficiency.

The story of this case commences in 1909. At that time plaintiff was about 20 years of age, and defendant, 37 or 38. Appellant's first wife was the plaintiff's aunt by blood. Plaintiff went to the home of Mr. and Mrs. Muench, near Paullina, Iowa, in the summer or fall of 1909. Appellee taught one term of school, which appellant assisted her in obtaining, and he drove her to and from school a few times during the term. When plaintiff went to defendant's house, he and his wife were not getting along together, and were then contemplating a divorce. The divorce matter was frequently discussed in the plaintiff's presence. Plaintiff knew of the marriage of defendant and his first wife, and their relations until a divorce was granted to appellant in October, 1911. Plaintiff testifies, and it does not seem to be denied by defendant, that, in July, 1910, he told her he had applied for the contemplated divorce. The divorce was not resisted. There appears to have been no trouble between defendant

and his first wife over plaintiff. Appellant appears to have been attractive in appearance. Plaintiff made her home with defendant and his first wife from the time she went there until the decree of divorce was granted, and she remained there after the divorce until about March, 1912. Defendant married his second wife on March 11, 1913.

Soon after plaintiff's arrival at defendant's home, he began to pay some attentions to her, according to her story, and used to drive her back and forth from school. Some 6 or 8 weeks after her arrival, while he was taking her to school, he attempted to kiss her, but she refused. She says several such attempts were made, and some 3 months after she went there, he asked to kiss her and she refused, but he did so anyway. This appears to have been about February, 1910. There is a sharp conflict in the testimony at some points, but she testifies, and the jury could have believed, that in April, 1910, she quit teaching school and was going away to work, but defendant wanted her to stay and told her she didn't need to work, and promised her a team of colts if she would remain there, and bought the team of colts and gave them to her; that defendant continued his familiarities when opportunity offered, without suggesting any additional improprieties, up to June, 1910. About that time, the parties were fishing on his farm, when he told her how much he thought of her; that he was getting a divorce from his wife, and that he wanted to marry her. She told him she would think it over, and, in a conversation a few days later, and after two or three discussions of the matter, she told him she would marry him when he had obtained his divorce. Thereafter, they talked about their proposed marriage, and he continued his lovemaking whenever there was opportunity.

About two weeks after she had consented to the proposed marriage, he proposed that they take a trip together

to the Yellowstone Park. She says she told him that she ought not to do that, and at first said she would not do so, but that he pictured the trip out so grand, and told her he was going to marry her as soon as he got his divorce, and that he had started proceedings, and she finally consented. She claims that, by arrangement, and pretending she was starting for Massena, Iowa, where her sister lived, she went to Sioux City, where he met her; that they proceeded together to Omaha and to Yellowstone. They remained all night at Omaha, where he registered them as man and wife, and they occupied the same room. She claims that here there were further assurances that he would marry her after he had obtained a divorce, and she says that sexual intercourse occurred between them that night for the first time. They completed their trip through Yellowstone Park, traveling as and representing themselves to be man and wife, and returned to Omaha in about two weeks, from where she went to Massena, and visited with her sister about three months. During the time she remained in Massena, he wrote her one or two letters a week, in which he told her how lonesome he was and how he missed her and how he longed to see her and for the time to come when he could marry her, and wanted her to come back to Paullina as soon as she could. While she was at Massena, defendant wrote her, and they took another trip to Omaha, where they stayed together at a hotel, and went to Sioux City together. She returned to defendant's home in November, 1910, where she continued to live until after the divorce was granted. Defendant denies all intercourse, and plaintiff testified that they sustained no illicit relations at his place prior to the divorce. She testifies that defendant continued to talk to her nearly every day about marriage and of his feelings for her.

It appears that the divorce decree contained no provision permitting either party to marry within a year. She

says her relations continued after the divorce was granted; that he continued to talk to her about marriage, every day sometimes, and he said that, one year after the divorce was granted, he would marry her. There is evidence that, following the divorce, the parties resumed their sexual intercourse, and he frequently occupied the same room with her at night; that he would come to her room about ten o'clock and stay until morning. He told her about his property. She left to go to Waterloo to work about March 1, 1912. He told her that, as soon as the year was up after he got his divorce, he would marry her, and she says he cried that she was going, and said he would come to see her, and asked her to write and said he would, and they did; that she did not keep copies of her letters, and destroyed a part of his letters at his request. She testifies that, in obedience to his written request, she met him at Fort Dodge on several different occasions, where they would stay at a hotel as man and wife, and that he came to see her at Waterloo; that they made trips at various times to other towns, on each of which intercourse was indulged in, after which she would return to Waterloo; that on such occasions they discussed their proposed marriage, where they would live, the kind of a house he would build, and other like matters, and discussed the kind of furniture they would have in their home. During her residence in Waterloo, plaintiff received letters from defendant, some of which she retained, together with the envelopes in which they were received; these were introduced in evidence, and they corroborate her story as to the relations between them, and his agreements to marry, and kindred subjects. Defendant denies that he ever wrote or mailed any of these letters, but there is evidence from which the jury could have found that he did. A witness for defendant testified that plaintiff told him that she took the trip through Yellowstone Park with a traveling man, and was going to claim that it was defendant, and that plaintiff

told him that defendant had never promised to marry her.

A witness, Mrs. Peddicord, testified that plaintiff roomed at her house for about seven months after March 8, 1912, and that during that time defendant had been at her house to see plaintiff; that he stayed two successive nights; and she testified to admissions by defendant tending to refute his claim that he had written no letters to plaintiff. Plaintiff says that she stayed at a hotel in Fonda with defendant, March 5, 1913, and that, at this meeting, defendant said to her that he would come to her in Waterloo in about two weeks, and that they would be married, and that everything was settled; and that she consented to this. He married his present wife, with whom he had been keeping company several months, on March 11, 1913, six days after plaintiff says defendant spent the night with her. She testifies that she never heard from him after they stopped at Fonda. She testifies as to the sleepless nights and other effects which defendant's marriage to his second wife had upon her. She testifies she would not have sustained the relations with defendant which she did but for his promises to marry her, and that she relied thereon and believed he would; that she never had sexual intercourse with any other man than defendant.

Defendant also claimed to have made a settlement of plaintiff's claim, for $300; but we do not understand that question to be in controversy upon this appeal.

We have not set out all the testimony. It is necessarily incomplete. There is evidence in the record which would justify the jury in finding that there was a promise of marriage after the divorce and within the statutory time; that plaintiff was seduced by the defendant; there is also evidence in the record from

2. APPEAL AND ERROR: review: denial of new trial: deference to judgment of trial court.

which the jury may have found reformation on plaintiff's part after the first improper conduct. Appellant bitterly attacks the plaintiff and her character, and claims that, because of her conduct as testified to by her and others, she should not be believed. But the credibility of plaintiff and of all the witnesses was a question for the jury, as was the testimony of the defendant. The trial court, in ruling on the motion for new trial, characterized a part of the testimony of defendant and some of his witnesses as wilful and corrupt perjury, and said that, in his opinion, the defendant was guilty of subornation of perjury, and stated that defendant practically denied everything on the trial,—he denied not only letters, but denied going to Waterloo to see plaintiff; that these two matters in particular, to the court's mind, showed wilful and corrupt perjury, and that he had no doubt about it; that there were things in the letters that no person could forge. All the parties and witnesses were observed by the jury and by the trial court. We do not have the opportunity to do so. It is sometimes as important to see a witness as to hear what he says. We ought to and do give weight to the judgment of the trial court in passing upon a motion for new trial.

1. It is contended by appellant that the alleged contract of marriage made before defendant was divorced is void, and, further, that the fact that the alleged marriage was not to take place until the expiration of one year after the divorce does not give validity to the agreement; that this may not be the basis of an action (citing cases). But appellee does not predicate her case on any agreement of marriage made prior to defendant's divorce. As already stated, the testimony shows new and independent promises following the divorce. But the authorities hold that a promise made when the promisor is married does not make invalid a promise made when he

3. MARRIAGE: promise to marry: valid as affected by invalid promise.

is not married. Under the authorities, it was not neces-
sary to prove an express promise subsequent to the di-
vorce. It is enough if circumstances are adduced from
which a promise can with reason be inferred. *Royal v.
Smith*, 40 Iowa 615; *McKee v. Mouser*, 131 Iowa 203; *Rime
v. Rater*, 108 Iowa 61.

4. MARRIAGE:
promise to
marry:
breach: evi-
dence: history
of case: re-
lation of
parties.

It is thought by appellant that evidence
in relation to the trip to the Yellowstone
Park and the relations between plaintiff and
defendant and their conversations prior to
the divorce, should have been excluded, and
the jury instructed to disregard it because
not competent. But we think that, even though an action
may not be based upon a promise of marriage before a di-
vorce, plaintiff knowing that fact, still the evidence was
proper as showing the history of the case and the relations
between the parties. *Lauer v. Banning*, 140 Iowa 319.

5. MARRIAGE:
breach of
promise: prom-
ise made dur-
ing prohibited
period.

2. Appellant's next contention is that
he was ineligible to marry within one year
from the date of the decree of divorce, and,
being such, could not enter into a valid con-
tract of marriage within that time, citing
Code Supplement, Section 3181; *Lanham v. Lanham*, (Wis.)
17 L. R. A. (N. S.) 804, 806; *Succession of Gabisso*, (La.) 11
L. R. A. (N. S.) 1082, 1088; *Dimpfel v. Wilson*, (Md.) 15
Ann. Cas. 753, 761; *Haviland v. Halstead*, 34 N. Y. 643. But
there is evidence in the record that, on different occasions
after the divorce was granted, there was an agreement to
marry at the expiration of one year from the date of the di-
vorce. While it may be true that an agreement to marry
within that year would be invalid, unless they had been
married in another state, we see no reason for holding that
the agreement is not binding, even though it is made within
the year, but the marriage to be performed after the ex-

piration of a year. It has been so held. *Leininger Lumber Co. v. Dewey*, (Neb.) 126 N. W. 87 (4 R. C. L. 146); *Buelna v. Ryan*, (Cal.) 73 Pac. 466; *Cooper v. Bower*, (Kan.) 96 Pac. 59, 794; *Judy v. Sterrett*, 52 Ill. App. 265. Furthermore, had the marriage been consummated in a foreign state where such a marriage would be valid, it is possible that this would, under our own holding, be a legal marriage. *Dudley v. Dudley*, 151 Iowa 142.

3. Appellant contends that there may be no recovery of exemplary damages by reason of the alleged seduction or sexual intercourse, for the reason that there could be no seduction of appellee by reason of any valid contract of marriage, and that, if she sustained illicit relations with appellant, she was equally guilty. But it has been held that a female may be seduced by a married man, although he is known to her to be such. *State v. Donovan*, 128 Iowa 44. The record shows other artifices and seductive arts than the promise of marriage; and, while plaintiff's loss occasioned prior to the divorce may not be recovered by her as one of the results of a breach of a subsequent valid promise of marriage, such promise, made when both knew defendant to be living in a loveless marriage, and where, as here, the wife was desirous of entering a convent, and a divorce was imminent, together with his previous continued and concurrent protestations of love and affection, and other seductive arts and artifices, is sufficient to constitute seduction. The disparity of their ages is proper to be considered. *State v. Donovan*, supra; *Hawk v. Harris*, 112 Iowa 543, 547; *Egan v. Murray*, 80 Iowa 180.

But, conceding that the first intercourse was not seduction, there is testimony from which the jury may have found that, from November, 1910, until some time after the divorce in October, 1911, the parties indulged in

6. SEDUCTION: acts constituting: married person.

7. SEDUCTION: reformation: effect.

no sexual intercourse. From this the jury was authorized to find a reformation, and that defendant's conduct subsequent to the divorce and after the reformation was seduction. *State v. Carron*, 18 Iowa 372; *State v. Knutson*, 91 Iowa 549; *Baird v. Boehner*, 77 Iowa 622, 628; *Falkner v. Schultz*, (Wis.) 150 N. W. 424. Appellee contends that intercourse subsequent to the divorce was seduction, regardless of the question of reformation, and cites, in support of the proposition, *Smith v. Milburn*, 17 Iowa 30, 37; *Olson v. Rice*, 140 Iowa 630; *Wilson v. Mangold*, 154 Iowa 352; *Falkner v. Schultz*, supra; and other cases.

8. MARRIAGE: promise to marry: evidence: seduction.

But we do not deem it necessary to further discuss or determine this point, because, as stated, there was evidence from which the jury might have found reformation. Proof of seduction subsequent to the divorce is competent as bearing upon the question of a marriage contract. *McConahey v. Griffey*, 82 Iowa 564; *Beans v. Denny*, 141 Iowa 52; *Fletcher v. Ketcham*, 160 Iowa 364. And it has been held that proof of former seduction is competent on the question of later seduction, as showing the power gained over the woman. *Fisher v. Bolton*, 148 Iowa 651, 652; *Baird v. Boehner*, supra.

9. DAMAGES: exemplary damages: breach of marriage contract: seduction: malice.

In this connection, appellant contends that there can be no malice imputed to appellant, because there was no valid contract of marriage prior to the divorce, because plaintiff had knowledge that defendant was married; and that, when she knowingly entered into her alleged agreement of marriage, she was a party to the unlawful arrangement and equally blamable with appellant; that there is no malice from mere breach of a marriage contract. We have sufficiently referred to appellant's claim in regard to the promise before the divorce. To constitute malice, it is not necessary that

there should be hatred or ill will, or malice in that sense. But the authorities hold that wantonness or the wilful disregard of the rights of others may constitute legal malice. The law is settled in Iowa that exemplary damages are allowable in cases of tort of this character, and are allowable in an action for seduction. *Verwers v. Carpenter,* 166 Iowa 273; *Stevenson v. Belknap,* 6 Iowa 97; *White v. Spangler,* 68 Iowa 222; *Hendrickson v. Kingsbury,* 21 Iowa 379; *Reddin v. Gates,* 52 Iowa 210.

It has been held in many cases that aggravated damages, whether compensatory for a special loss suffered by plaintiff, or as a punishment to defendant, are allowable in a breach of promise case. *Baumle v. Verde,* Ann. Cas. 1914B, 317, note on page 319; *Johnson v. Travis,* (Minn.) 22 N. W. 624; *Hiveley v. Gollnick,* (Minn.) 144 N. W. 213; *Tamke v. Vangsness,* (Minn.) 75 N. W. 217; *Sneve v. Lunder,* (Minn.) 110 N. W. 99; *Thorn v. Knapp,* (N. Y.) 1 Am. Rep. 561; *Chellis v. Chapman,* (N. Y.) 11 L. R. A. 784; *Coryell v. Colbaugh,* (N. J.) 1 Am. Dec. 192; *Jacoby v. Stark,* (Ill.) 68 N. E. 557; *Baumle v. Verde* (Okla.) 41 L. R. A. (N. S.) 840, note; *Hughes v. Nolte,* (Ind.) 34 N. E. 745; *Kurtz v. Frank,* (Ind.) 40 Am. Rep. 275; 5 Cyc. 1021; 4 R. C. L. 157, 159, 160; *Denslow v. Van Horn,* 16 Iowa 476; *Stokes v. Mason,* (Vt.) 36 L. R. A. (N. S.) 388, and note; *Johnson v. Jenkins,* 24 N. Y. 252; *Harrison v. Carlson,* (Colo.) 101 Pac. 76; *Anderson v. Kirby,* 5 Ann. Cas. 103, and note; *Wells v. Padgett,* 8 Barb. (N. Y.) 323; *Sauer v. Schulenberg,* (Md.) 3 Am. Rep. 174; *Lawrence v. Cooke,* (Me.) 96 Am. Dec. 443; *White v. Thomas,* (Ohio) 80 Am. Dec. 347; *Daggett v. Wallace,* (Tex.) 16 Am. St. Rep. 908; *Conn v. Wilson,* (Tenn.) 5 Am. Dec. 663; *Roberts v. Druillard,* (Mich.) 82 N. W. 49; *Wrynn v. Downey,* 4 L. R. A. (N. S.) 615, and note; *Lanigan v. Neely,* (Cal.) 89 Pac. 441; *Sheahan v. Barry,* 27 Mich. 217, 219; *Kelley v. Highfield,* (Ore.) 14 Pac. 744; *Sramek v.*

*Sklenar,* (Kan.) 85 Pac. 566.

Some of the foregoing cases refer more particularly to exemplary damages. Appellant cites no authorities contrary to this view. We do not feel called upon to determine in this case whether damages referred to specifically as exemplary damages are recoverable, because aggravated damages may be allowed for seduction, and there is evidence of seduction in this case. *Lauer v. Banning,* 140 Iowa 319; *Herriman v. Layman,* 118 Iowa 590; *Geiger v. Payne,* 102 Iowa 581; and cases before cited.

10. MARRIAGE: promise to marry: breach: evidence: history of case: relation of parties.

Complaint is made by appellant in regard to some of the instructions given by the court and offered by him and refused. But they bear for the most part upon the question of the contract before the divorce, and other questions which we have already

determined. The instructions given by the court prohibited the consideration by the jury of any acts of sexual intercourse prior to the divorce, except as a part of the history of the case, and, as they were admissible for that purpose, there was no error in their admission. *Lauer v. Banning,* supra.

11. MARRIAGE: promise to marry: breach: evidence: history of case: relation of parties.

It is appellee's contention that, when defendant entered into his first valid contract of marriage with plaintiff, and when he broke it, he was actuated by malice and bad faith, and that he never had any intention of marrying plaintiff, but that his mo-

tives were to induce her to yield to his sexual desires; that testimony of their prior intercourse and of their relations at that time was admissible as bearing on his motives and his malice at the time he first made a valid promise of marriage. The following cases, which we think sustain this claim, are cited: 26 Cyc. 99; *State v. Vance,* 119 Iowa 685; *Clark v. Folkers,* (Neb.) 95 N. W. 328; *Hendrickson v.*

*People,* (N. Y.) 61 Am. Dec. 721, 729; *People v. Molineux,* 62 L.R.A. 193, and note, 329.

'4. It is next contended by appellant

12. MARRIAGE: promise to marry: breach: damages: financial standing of defendant.

that there is no evidence that appellee lost any social advantages because of appellant's refusal to marry her, or that he had any social standing, or that she suffered any mortification on account of the failure of appellant to marry her, because she did not tell anyone about it; that these matters, being elements of damage, should be alleged and proved. It is true, of course, that, if any claim for damages is made for these items, they should be proved. But we think there is evidence upon these points. The appellant is shown to be a man of considerable means, so that, from that standpoint, a marriage with defendant would be an advantageous one to plaintiff, and plaintiff testified in regard to her feelings because of his refusal to marry her, and his marriage to another woman.

In the note to L. R. A. above referred to, there are many cases where the amount of the recovery is shown and the amount of property possessed by the defendant, and whether there was or was not seduction, and other aggravating circumstances or the lack of them.

5. Appellant contends that the verdict

13. TRIAL: verdict: $15,000: excessiveness: breach of promise to marry.

is the result of passion and prejudice and is excessive, citing *Baumle v. Verde,* (Okla.) 41 L. R. A. (N. S.) 840, and note at pages 853, 854; *Johnson v. Levy,* (La.) 16 Ann. Cas. 978, 982; *Giese v. Schultz,* (Wis.) 27 N. W. 353, 355; *Halness v. Anderson,* (Minn.) 124 N. W. 830.

It is the rule that, in an action for breach of promise of marriage, evidence of financial condition, earning ca-

pacity and reputed wealth is admissible, and may be considered in estimating the damages. *Holloway v. Griffith,* 32 Iowa 409; *McKee v. Mouser,* supra; *Vierling v. Binder,* 113 Iowa 337; *Rime v. Rater,* supra; *Geiger v. Payne,* supra; *Royal v. Smith,* supra.

In the *Geiger* case, a verdict of $16,000, where defendant was worth from $50,000 to $70,000, and where there was seduction, was held not excessive. The testimony of defendant as to his wealth and his earning capacity was somewhat evasive, but he admitted that, in the auctioneering business, he had from 40 to 75 sales a season, and he says he made from $20 to $40 per sale. He is shown to have made many real estate deals, and he admits that he never lost any money on any of them. The testimony indicated that, at the time of the trial, he was worth in the neighborhood of $40,000. There is no standard or definite rule, and ordinarily this court will not attempt to substitute its judgment for that of the jury, unless it is evident that passion and prejudice affected the amount allowed. There was evidence from which the jury could properly have found that the conduct of defendant was strikingly flagrant. If the verdict be regarded as large, its size may be evidence rather of the enormity of defendant's offense in the eyes of the jury than of any passion or prejudice on their part. The verdict is large; but, taking into consideration all the circumstances in the case, we are not prepared to say that it is excessive.

As stated, some of the errors assigned are not argued. As to some of them, they are not referred to in the points argued, and no authorities are cited. In some instances, the same proposition has been restated in a different form, and there is more or less repetition. We have considered those which are controlling. Some are clearly without merit.

On the whole case, it is our conclusion that there is no prejudicial error, and that the judgment ought to be, and it is,—*Affirmed.*

DEEMER, WEAVER and EVANS, JJ., concur.