MARTHA E. FLETCHER, Appellee, v. CLAY KETCHAM, Appellant.

**Evidence:** CREDIBILITY OF ATTORNEY AS WITNESS: INSTRUCTION. An
1    attorney is a competent witness for his client, but when he concludes to become a witness professional ethics require that he withdraw from the case as an attorney, if he can do so without disregarding the interests of his client. Where, however, he serves his client in both capacities, which is largely a matter of discretion with the attorney, the jury should be instructed to consider his interest in the litigation as affecting his credibility, but his action in so doing should not be condemned by an instruction, calculated not only to affect his credibility as a witness, but to entirely discredit all his efforts as counsel as well.

**Breach of marriage contract:** EVIDENCE. In a suit for the breach of a
2    marriage contract intercourse between the parties may be considered on the question of the marriage promise.

**Same:** SEDUCTION: EVIDENCE. In this action the circumstantial evidence
3    is held sufficient to raise the question of whether the intercourse of the parties was induced by a promise of marriage, although there was no direct evidence on the subject.

**Breach of promise:** DAMAGES: AGGRAVATION. Rape or mere sexual intercourse cannot be considered in aggravation of damages in cases of breach of promise to marry.

**Seduction:** Submission to intercourse with a man on his promise of marriage is seduction.

*Appeal from Van Buren District Court.*—HON. F. W. EICHELBERGER, Judge.

FRIDAY, JUNE 6, 1913.

ACTION for breach of promise of marriage. Seduction was also pleaded in aggravation of damages. Defendant denied generally and pleaded a settlement; accord and satisfaction. Plaintiff denied the settlement and pleaded that a receipt set forth in defendant's answer had been altered, changed, and forged after she had signed and delivered the same. On these issues, the case was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $2,800, with a special verdict to the effect that the receipt, pleaded by defendant, had been altered and changed after its delivery by plaintiff. Defendant appeals.—*Reversed.*

*S. E. Irish, E. L. McCoid, J. C. Mitchell, Sloan & Sloan* and *W. B. Seeley,* for appellant.

*Walker & McBeth,* for appellee.

DEEMER, J.—There was ample testimony to take the case to the jury upon every issue tendered by the pleadings, unless it be on the question of seduction, to which further reference will be made during the course of the opinion.

The principal grounds for a reversal relate to the instructions given and refused, to the special finding of the jury, as being against the weight of the evidence, and to remarks made by the trial court in disparagement of one of defendant's counsel.

As already indicated, there was sufficient testimony to take the case to the jury on the question of breach of promise of marriage; of the parties having had intercourse with each other, during the engagement between them; and of the birth of a child as a result of such intercourse. It also appears that plaintiff caused bastardy proceedings to be instituted against the defendant, and that this was settled by defendant; he paying the plaintiff either the sum of $300 or $400. Defendant pleaded, as part of his defense, a full settlement of all claims held by plaintiff against him, and attached to his answer a receipt of which the following is a copy:

Nov. 11, 1909.

Rec'd of B. F. Ketcham one hundred dollars ($100.00) in settlement of the claim of maintenance of a certain child alleged to be the child of Clay Ketcham [and in full of any claim against Clay Ketcham].

Martha Eliz. Fletcher.

Plaintiff says that the words which we have enclosed in brackets were inserted after she had signed and delivered the receipt, and that the only thing which was settled was the bastardy proceedings. Upon the trial another receipt was introduced in evidence, in the following form:

In the District Court of Van Buren County, Iowa, November Term, 1909.

State of Iowa, on Complaint of Martha Elizabeth Fletcher, v. Clay Ketcham, Bastardy.

For and in consideration of the sum of three hundred ($300.00) dollars and other valuable consideration, the receipt whereof is hereby acknowledged, the above-entitled cause is hereby settled and dismissed and the charges withdrawn against the defendant, and denied, and I further say the defendant is not guilty and all claim for maintenance of said child is hereby settled in full.

[Signed]    Martha Elizabeth Fletcher.

State of Iowa, Van Buren County.

I, Martha Elizabeth Fletcher, being sworn say that the above and foregoing was signed by me at 2:10 p. m. this 11th day of Nov. 1909, and that the statements therein contained are true.

Martha Elizabeth Fletcher.

Subscribed and sworn to before me this 11th day of November, 1909.   Martin Harnagle, Notary Public in and for Van Buren County, Iowa.

It is briefed on the back and noted filed November 11, 1909, by the clerk.   Also on the back: "Signed in the presence of B. F. Ketcham, E. L. McCoid, and Martin Harnagle."

Plaintiff says that what purport to be her signatures to this instrument are false and forged.

Included in the record, is a stipulation of settlement attached to some of the papers filed in the case of State, on Complaint of Martha Elizabeth Fletcher v. Clay Ketcham, as follows:

For the consideration of three hundred dollars and other valuable considerations it is hereby stipulated and agreed that the above entitled cause is settled and dismissed, and all claim against the defendant on the charges made in said complaint are hereby settled and dismissed.   This being intended as a receipt in full to the defendant on the claim of maintenance of the said child.

Martha Elizabeth Fletcher.

Signed in the presence of
W. M. Walker.
Jesse E. Fletcher.

It is admitted by plaintiff that she received $400, but she claims that defendant paid but $300 of this in settlement of the bastardy proceedings, and that one Frank Ketcham paid the other hundred on his own volition for the maintenance of the child and took the receipt, first quoted, simply to show how much he paid.

There was, in our opinion, ample testimony to take the case to the jury on the question of the genuineness of the two receipts which are in issue, and the special finding has support in the testimony. One of the main issues in the case was whether or not plaintiff signed the two receipts in question in the form in which they now appear, and one E. L. McCoid, who, it seems, was instrumental in bringing about the settlement and procuring the receipts, was then and during the progress of the present trial an attorney for the defendant. He also became a witness at this trial in support of the receipts in the form in which they appear. He did not withdraw from this last case, but took an active part in the trial, examining witnesses and making an argument to the jury. Because of this violation of professional ethics, in appearing both as witness and counsel in the case, or for some other reason, the trial court evidently became somewhat irritated with Mr. McCoid, lost that judicial poise which should ever be present in the trial of a case, and during the cross-examination of plaintiff, the following occurred: "Q. Refreshing your memory after your other signatures, which you say are yours, I ask you again to look at the name Martha Elizabeth Fletcher on Exhibit 1, and ask you to say whether or not that is your signature. A. No; it is not. I know it is not; the name Martha Elizabeth Fletcher on the back of it is not my signature; I know it is not. Q. You don't recognize it to be your handwriting? A. It is similar to mine, but it is not mine. Q. The other one you say you do not recognize to be your handwriting? Court: That is enough of that, for Lord's sake. Mr. McCoid: We except to the court's remark.'' It may be that counsel had already covered the matter in another way; but the remark of the court seems to have been unfortunate.

I. As already indicated, McCoid was a witness for the defendant and doubtless a necessary one, because of his par-

ticipation in the settlement of the former suit, and by reason

1. **EVIDENCE: credibility of attorney as witness: instruction.**
of the fact that he was a witness to some of the disputed signatures upon the exhibits, which we have quoted. He did not withdraw from the case as an attorney, but participated actively in the trial.

At plaintiff's request, the trial court gave the following instruction:

14. You are instructed that in this state an attorney is a competent witness for his client, if he desires to be such; but the law does not look with favor upon an attorney testifying as a witness in a case in which he is actively engaged as an attorney conducting the trial of the case. In such case, when it becomes certain that the attorney will have to be called as a witness in the case, prudence would indicate that he withdraw from the case as attorney. No attorney having a just conception of his true and proper position will willingly unite the character of counsel and witness in the same case.

Given at request of plaintiff.

Frank W. Eichelberger, Judge.

This was duly excepted to, and counsel for defendant strenuously contend that it was erroneous and highly prejudicial to their client. It is true, of course, that this instruction announced a rule of professional ethics, which has long been known to, and generally practiced by, members of the bar of this state. See *Alger v. Merritt,* 16 Iowa, 121.

An attorney is undoubtedly a competent witness for his client, and often it is absolutely necessary that he become such witness; but when he takes the stand, the fact that he is an attorney for the party in whose favor he is testifying may and should be considered by the jury on the question of his credibility. *Ross v. Ross,* 140 Iowa, 51-54; *Kintz v. Menz Lbr. Co.,* 47 Ind. App. 475 (94 N. E. 802); *Edwards v. Edwards,* 63 N. J. Eq. 224 (49 Atl. 819). And it is undoubtedly contrary to professional ethics for an attorney to become a witness without first entirely withdrawing from

any further connection with the case, if he can safely do so without disregarding the interests of his client. Moore on Facts, vol. 2, section 1107. Whether or not he will observe the rule is a question of legal ethics, and largely a matter of discretion, and while the jury should be instructed to take the matter of his interest as an attorney into account in determining the weight and credibility of his testimony, we think the lecture on professional ethics, embodied in this instruction, should not have been given. It not only affected his credit as a witness, but, if considered by the jury, as we must assume that it was, entirely discredited all his efforts as counsel for the defendant. Such an instruction necessarily had the effect of discounting everything that McCoid did, either as witness or counsel, in the case. These rules of professional ethics are for the guidance of attorneys in the practice of their profession and, of course, they should, as a rule, be scrupulously obeyed if one would retain his standing as a member of an honorable profession; but, it is not for the court to enforce them to the prejudice of the client, or to state them to a jury in such a way that the client may suffer because counsel may not have observed the ethical rules of his profession. The attorney was a competent witness, and his testimony was to be weighed in the light of his interest as an attorney; but his conduct as an attorney was not to be minimized before the jury because he was a witness in the case. No such instruction has even been approved, to our knowledge, by any court of last resort in this country. And, as we have said, these rules of professional ethics are not guides for the jury; and, if violated, a client should not be made to suffer from such violation. A discretion is necessarily lodged in counsel as to whether or not he will observe them. But we may remark, in this connection, that in all cases of doubt, the attorney should, out of respect for his profession, solve that doubt in such a way as to uphold the honor and respectability of his position.

II. Plaintiff claims that she was induced to surrender

her virtue to the defendant by reason of his promise of mar-

2. BREACH OF MARRIAGE CONTRACT: evidence. riage, his seductive arts, flattery, and deception; that she became with child, as a result thereof, and underwent the usual agonies of childbirth. Such seduction was pleaded in aggravation of damages.

In this connection, the trial court gave the following instructions:

7. In this case the plaintiff pleads seduction by the defendant as an element of damage. Seduction is having sexual intercourse with a woman of previous chaste character, procured or induced by means of a promise of marriage, flattery, protestations of love and affection, or other seductive arts and influences. If, therefore, you find from the evidence that the defendant promised to marry the plaintiff, and by reason of that promise and by protestations of love and affection, induced the plaintiff to yield her virtue to him, and you further find from the evidence, that the plaintiff was of previous chaste character, this would be seduction, and if you so find, such fact, if it be a fact, may be considered by you as bearing on the question whether there was a promise of marriage between plaintiff and defendant, and also in aggregation of damages if you find in favor of plaintiff.

8. You are instructed that the defendant had not plead in this case that the plaintiff was a woman of bad character, or that she was not of chaste character. You cannot, therefore, consider that question to lessen damages. You can only consider that question in determining whether or not the plaintiff was seduced by the defendant. You cannot consider it for any other purpose in this case.

And as bearing upon the measure of damages, the following:

12.  .  .  .  And, if, while the parties were mutually promised in marriage, if they were, and intending and expecting marriage, if they were, the defendant solicited, in consideration of such intention and expectation, and the plaintiff permitted, in consideration of such expectation and intention,

sexual intercourse with her, these facts may be considered by you in computing damages, so far as they tend to aggravate and increase the disgrace, disappointment, mortification, pain or distress of mind, which she has suffered by reason of the breach of contract, if any, and award her such sum as damages as you, in the exercise of a sound discretion believe from the evidence in the case, she should have on account of the breach of the contract, if any, not exceeding $10,000.

Of these instructions, complaint is made; and defendant also asked the court to instruct that, as there was no testimony of any seduction, the fact that the parties had sexual intercourse, and that a child was born unto them could not be considered as bearing upon the damages to be awarded.

Included in the instruction asked was what is known as No. 7, which, considered with those given, raises the exact question relied upon for a reversal. It reads as follows:

7. If you find that the defendant was engaged to be married to the plaintiff, and she voluntarily and without the use of any false promise or seductive arts on his part permits him to have sexual intercourse with her, then he would not be guilty of seducing her and there is no evidence she was induced to have sexual intercourse with him by reason of any promise of marriage, or the use of any seductive arts, and hence you cannot allow her damages by reason thereof.

Under our decisions, indulgence in sexual intercourse between the parties may be considered in a breach of promise suit as tending to support the claim that there was a promise of marriage. *McConahey v. Griffey,* 82 Iowa, 564; *Lauer v. Banning,* 140 Iowa, 319; *Herriman v. Layman,* 118 Iowa, 590; *Beans v. Denny,* 141 Iowa, 52. This rule has so long been adhered to that we are not disposed to depart from it at this time. It may be said, however, that it is not involved in this case, save inferentially.

Appellant's counsel do not claim that seduction may not be considered in breach of promise cases in aggravation

of damages; but they do insist most strenuously that the

3. SAME: seduc-      testimony adduced does not show a seduction
   tion: evidence.   of the plaintiff. They assert that the testimony
shows nothing more than sexual intercourse or carnal knowl-
edge, and that no inference should be drawn that it was the
result of a promise of marriage or was brought about by any
seductive arts. It is true that the record is void of direct tes-
timony to the effect that plaintiff consented to the intercourse
because of a promise of marriage or because of any seductive
arts. We quote from appellant's brief the following, as stating
the exact point made by counsel with reference to the matter
now under consideration: ''Our contention simply is that
where an unmarried couple have indulged in sexual intercourse
with each other, proof of an engagement between them to mar-
ry is ordinarily not alone, and of itself, and without more,
sufficient to establish a *prima facie* case of seduction against
the man. In addition, there must be evidence of some artifice
or wile practiced on the woman—there must at least be evi-
dence of solicitation, importunity, or overcoming persuasion
by the man and of at least some reluctance and misgiving and
hesitation on the part of the woman.'' We are constrained
to hold that while there is no direct testimony from plaintiff
as to what caused her to surrender her person to the de-
fendant, yet the record is such as that a jury would have
been justified in inferring that it was because of a promise of
marriage. There was ample testimony of a promise of marriage
long before the sexual intercourse occurred, which promise
was repeated, either in express terms or by necessary infer-
ence, from time to time, down to near the time when defend-
ant married another. The intercourse occurred after defend-
ant went to live at the plaintiff's home, and after defendant
had made love to plaintiff and had promised to marry her.
Whilst it would have been safer and better to have inquired
of plaintiff as to what induced her to yield her person to the
defendant, we, nevertheless, are constrained to hold that this
may be found by inference from other facts and that it was

a jury question to be determined upon all the testimony adduced. See *State v. Criswell,* 148 Iowa, 254; *State v. Price,* 157 Iowa,—; *State v. Mulholland,* 115 Iowa, 170; *State v. Knutson,* 91 Iowa, 549; *State v. Stolley,* 121 Iowa, 111.

This is no departure from the rule that rape or mere sexual commerce cannot be considered in aggravation of damages in a breach of promise case. The intercourse must

**4. BREACH OF PROMISE: damages: aggravation.** have been induced by promise of marriage or by false and deceptive arts or practices to be considered in enhancing the damages. *Lauer v. Banning,* 140 Iowa, 319. But it is not necessary in every case to show, by direct evidence, that the woman was induced to surrender her virtue by reason of a promise of marriage or other seductive arts. Like many other things this may be shown by circumstantial or indirect testimony. *State v. Curran,* 51 Iowa, 112; *State v. Smith,* 124 Iowa, 334; *State v. McClintic,* 73 Iowa, 663; *State v. Hughes,* 106 Iowa, 125; *Hawk v. Harris,* 112 Iowa, 543; *State v. Drake,* 128 Iowa, 539; *State v. Stolley,* 121 Iowa, 111.

Counsel cite some cases which seem to hold that if a woman submits herself to intercourse with a man on the strength of a promise of marriage, it is not seduction, but a mere barter and sale. But such is not the holding of this

**5. SEDUCTION.** court, or of the courts generally. See cases hitherto cited. *Baird v. Boehner,* 72 Iowa, 318, does not hold to the contrary.

For the errors pointed out, the judgment must be, and it is, *Reversed.*

WITHROW, J., takes no part.