**AIR HOST CEDAR RAPIDS, INC., Appellee,**

v.

**CEDAR RAPIDS AIRPORT COMMISSION, Appellant.**

No. 89–925.

Supreme Court of Iowa.

Dec. 19, 1990.

Rehearing Denied Jan. 24, 1991.

Robert G. Allbee and Ivan T. Webber of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, and Robert R. Stefani, Frank S. Mitvalsky, and Thomas F. Ochs of Gray, Stefani & Mitvalsky, Cedar Rapids, for appellant.

Patrick M. Roby, Kevin H. Collins, and Kellee J. Britt of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee.

HARRIS, Justice.

This baffling case involves tangled questions of liability, damages, and error preservation. Defendant, Cedar Rapids airport commission, brought this appeal following a plaintiff's verdict for a former concessionaire at the Cedar Rapids airport. The concessionaire claimed both breach of contract and fraudulent representation. We conclude that the breach of contract claim is not viable, but that the fraudulent misrepresentation claim is. We affirm in part and reverse in part.

While planning a new airport terminal, the commission solicited concessionaires for the existing one. It was expected that the concessionaire selected would provide services for the existing terminal, participate in designing space for the new terminal, and continue serving in the new one. Plaintiff Air Host was selected and signed a written lease.

Air Host negotiated for the lease only because of the expectation by all parties that the successful concessionaire would be the likely concessionaire for the new terminal. The lease as signed did not however bear out the expectation. The lease contained two provisions which are crucial to the issues on appeal. They state:

Section 3.03—*New Airport Terminal Building*—In the event the Commission should construct the new Airport Termi-

nal Building within the term provided herein, Company shall have the first right to lease space in the new Terminal for the purpose of providing the same services as provided herein, and that this lease shall terminate on the existing building at such time as Commission terminates occupancy of the building. However, the terms and conditions of such lease and license shall be as mutually agreed.

Section 7.06—*Expenses Incurred by Company Regarding the New Airport Terminal*—Company has and will incur expenses regarding the planning of the New Airport Terminal. If Company does not obtain leased premises in said New Airport Terminal, or is otherwise not allowed to provide services in said New Airport Terminal then Commission agrees to reimburse Company for all incurred expenses which are documented and do not exceed $20,000 without the written consent of the Commission.

After Air Host began operating in the existing terminal it participated in planning and designing the concession space for the new one. Air Host also began negotiating with the commission for a new lease in the facility. By this time the airport had new commissioners who hired a new director. The new officials had not been involved in the original negotiations with Air Host and took a belligerent view toward Air Host's expectations to continue in the new facility.

Evidence on the question is sharply conflicting, but it easily supports the jury finding that the new airport director determined that Air Host would not, under any circumstances, be awarded the new contract and that it would go to some rival concessionaire. He in fact advised the rivals to this effect, even though the notice soliciting bids stated that Air Host held a "first right" to provide services in the new facility.

On two occasions Air Host offered to meet the terms of the best bid solicited by the commission, but each time the commission deferred acting. Air Host thus became convinced that the commission would never accept its bid. The commission even-

tually made one offer to Air Host. Because it had become convinced of the commission's bad faith, Air Host responded by bringing this suit. The same offer was accepted by Sky Chefs, Inc., another concessionaire. The parties dispute the significance of Air Host's rejection of the one offer.

By special verdicts the jury found Air Host had established liability for both breach of contract and fraudulent misrepresentation. It allowed substantial actual and punitive damages and also found for Air Host on its claim for $20,000 for preparing plans under section 7.06 of the lease.

■ I. We can summarily deal with two controverted separate damage awards. In submitting the special verdict for punitive damages, the trial court did not have the guidance of our subsequent opinion in *Parks v. City of Marshalltown*, 440 N.W.2d 377 (Iowa 1989). In *Parks*, applying Iowa Code section 613A.4(5) (1989), we held that a municipality is not liable for punitive damages. *Id.* at 379. We are unwilling either to overrule *Parks* or to carve out an exception in this case because the commission's revenues are not generated by direct taxes in the same manner as other city revenues. The punitive damage award must be set aside.

II. By another special verdict the jury awarded $20,000 under section 7.06 of the lease agreement for planning the new facility. The commission's sole challenge to this award is grounded on the claim that Air Host's expenses were not documented and documentation, it is said, is a condition precedent for liability under the provision. Ample documentation for the claim was produced. The assignment is without merit.

III. The commission claims error in submitting Air Host's breach of contract claim. The claimed breach stands or falls on the meaning of the words "first right to lease" in section 3.03 of the lease agreement. The commission insists Air Host was accorded all rights it could possibly claim under the provision when it was offered and rejected

the lease which was thereafter accepted by Sky Chefs.

The effect of Air Host's rejection of this offer becomes moot as it relates to the breach of contract claim because, as later explained, we find that claim to be not viable. As it relates to the false representation claim, to be discussed later, we think the rejection could not operate to bar Air Host's recovery.

The commission argues the words "first right to lease" are undermined by crucial language at the end of section 3.03: "However, the terms and conditions of such lease and license shall be as mutually agreed." This language, the commission contends, renders the entire provision an invalid agreement to agree.

■ Air Host contends the provision is no mere agreement to agree. It supports its contention by evidence that neither party treated it as such, that both considered it to be, and acted as if it were, a valid and binding option. Such evidence of the parties is admissible to interpret but not to vary the agreement under *Hamilton v. Wosepka,* 261 Iowa 299, 306–13, 154 N.W.2d 164, 168–72 (1967).

■ It is axiomatic that understandable or ascertainable terms are necessary ingredients for an enforceable contract. A contract generally is not found to exist where the parties agree to a contract on the basis to be settled in the future. *See generally* 17 C.J.S. *Contracts* § 49, at 702–03 (1963); 17 Am.Jur.2d *Contracts* § 26, at 362 (1964).

The principle has particular application as between landlord and tenant. It is said that "clauses in leases containing renewal covenants leaving renewal rental for the future agreement of the parties are generally held unenforceable for indefiniteness and uncertainty." 1 *Williston on Contracts* § 45 (3d ed. 1977).

We have applied this rubric in determining whether a lease exists. *McCarter v. Uban,* 166 N.W.2d 910, 914 (Iowa 1969) (to establish a lease, necessary to describe property, state term, and amount of rent). It does not appear that this case falls under the exception where indefiniteness can be made certain by reference to outside matters. *See* 1 *Williston on Contracts* at § 47.

■ Air Host asserts that the first sentence of section 3.03 accords it a full and unambiguous right of first refusal, and that it thus makes no difference that the lease was not specific. This contention collapses, however, when the two sentences of section 3.03 are taken together, and because of both their proximity and wording they must be taken together. The second sentence makes it clear that whatever is granted by the first sentence is subject to future negotiations and agreement by both parties.

On this record we conclude that the commission's motion to direct a verdict on Air Host's claim for breach of contract should have been sustained. The special verdict on the breach of contract claim must be reversed.

■ IV. The commission also contends the evidence fails to support Air Host's claim for false representation. The elements of a claim for false representation are: (1) a material misrepresentation; (2) made knowingly; (3) with intent to induce the plaintiff to act or refrain from acting; (4) upon which the plaintiff justifiably relies; and (5) damages. *Ryko Mfg. Co. v. Eden Servs.,* 823 F.2d 1215, 1237 (8th Cir. 1987) (applying Iowa law), *cert. denied,* 484 U.S. 1026, 108 S.Ct. 751, 98 L.Ed.2d 763 (1988).

There was no evidence of a material misrepresentation at the time the original lease was negotiated. Air Host did not show it relied on a misrepresentation when it signed the lease and began operation at the old terminal. In fact it concedes its problems did not begin until 1983 when "there was a change in philosophy among the airport commissioners," upon replacement of the old commissioners by new ones.

■ There was evidence, however, from which the jury could find the commissioners, or the airport director acting for them, materially misrepresented their intentions

while later negotiations were underway for facilities in the new terminal. At that time the airport director concealed from Air Host the fact that it had no intention of granting it a lease in the new terminal. There was evidence that it did so in the worst of bad faith, communicating that fact to one of Air Host's competitors.

Air Host's showing of the reliance and damage elements was limited. It was deceived only in its *negotiations* for the facility; it had no binding claim to lease the new facility. But Air Host can claim whatever damages flow from the commission's dishonorable intentions concerning the commission's eventual response to open-ended negotiations. There is little to indicate what Air Host's reaction would have been if the commission would have been candid about its plans regarding Air Host's offers. We know only that, when Air Host became convinced of the hopelessness of its plight, it commenced suit.

It does not however follow that Air Host failed to make out a jury question. There was evidence from which the jury could believe that the material misrepresentations deceived Air Host in the course of negotiations and reasonably deterred Air Host from further pursuing and securing a profitable contract.

We conclude that it was not error for the trial court to submit Air Host's claim for false representations.

■ V. In the special verdict on damages the jury was directed only to fix the amount of lost profits. The measure of damage in false representation claims is under the benefit of the bargain rule. *Cornell v. Wunschel*, 408 N.W.2d 369, 380 (Iowa 1987). Loss of profits can be claimed in certain fraud cases, but it is far from automatic. *See* R. Dunn, *Recovery of Damages for Lost Profits* § 3.12 (3d ed. 1986).

Under the circumstances here we think Air Host's recovery should not be limited to out-of-pocket losses, as is more often done in cases involving contracts for the sale or transfer of property. *See* Annotation, *"Out-of-Pocket" or "Benefit of Bargain" as Proper Rule of Damages for*

*Fraudulent Representations Inducing Contract for Transfer of Property*, 13 A.L.R.3d 875 (1967). Out-of-pocket expenses for this claim for loss of a profitable lease seem inappropriate.

The commission now argues it was inappropriate for the instructions to leap from merely being deceived from continuing negotiations to an automatic award of the lease. Air Host may have been outbid for the new lease even if relations with the commission had continued to be cordial and honorable. This is made clear by the provision for $20,000 under section 7.06 of the lease. The commission contends the instructions were deficient for equating the fraud shown with an automatic acquisition of the lease.

VI. Air Host vigorously contends that error was not preserved on the commission's assignment of error challenging the damage instruction. There is solid and familiar authority for insisting that contentions on appeal square with those presented in trial court. We consistently label as basic the rule that we review only the theories presented at trial. *Shill v. Careage Corp.*, 353 N.W.2d 416, 420 (Iowa 1984).

■ Although this tenet is sometimes criticized as placing too much emphasis on counsel's ability to articulate technical niceties, we are convinced the rule of error preservation is decidedly in the public interest. Without it, litigation could continue so long as unsuccessful counsel could suggest to us new grounds or theories which might have changed the trial's outcome. Thus the test for the sufficiency of an objection is whether it was sufficient at the time to alert the trial judge's mind to the contention now urged to us. *Pastour v. Kolb Hardware, Inc.*, 173 N.W.2d 116, 124 (Iowa 1969).

The stated objection at trial challenged only the sufficiency of the evidence to establish the lost profits. The trial court properly rejected the stated objection; there was ample evidence to establish the profits for the term, reduced to its present value.

We have considered and rejected the parties' other contentions and assignments. To discuss them would unduly extend this opinion. Tax costs one-half to each party.

The judgment for punitive damages is reversed. The judgment for $20,000 special damages is affirmed. The judgment for actual damages is affirmed.

AFFIRMED IN PART AND REVERSED IN PART.

All Justices concur except CARTER, J., who takes no part.