**Mary HAMEED, Appellant,**

v.

**Charlie Mae BROWN and Willie Smith, d/b/a Charlie Brown's Cafe, Dennis Mernka, Individually, and in His Official Capacity as a Police Officer for the City of Fort Dodge, and Ivan Metzger, Individually, and in His Official Capacity as Acting Chief and Chief of Police of the City of Fort Dodge, and City of Fort Dodge, a Municipality, Appellees.**

No. 93–1912.

Supreme Court of Iowa.

April 26, 1995.

Blake Parker of Parker & Fors, Fort Dodge, for appellant.

Brian L. Yung and Mark R. Crimmins of Bennett, Crimmins & Yung, Fort Dodge, for appellee Charlie Mae Brown.

James L. Kramer and William S. Gibb of Johnson, Erb, Gibb, Bice & Carlson, P.C., Fort Dodge, for appellees City of Fort Dodge and Police Officers.

No appearance for Willie Smith d/b/a Charlie Brown's Cafe.

Considered by LARSON, P.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

LAVORATO, Justice.

A Fort Dodge police officer tried to execute an arrest warrant against William Earl Roby, who had allegedly violated a no contact order. Roby escaped from the officer and later assaulted and seriously injured Mary Hameed for whose protection the no contact order had been issued. Hameed sued the city of Fort Dodge, the arresting officer, and the police chief, claiming the city was liable for her injuries on a negligence theory. (Unless otherwise referred to, we refer to these three defendants collectively as the "city.")

Hameed also sued Willie Smith and Charlie Mae Brown, alleged partners in the business where the assault took place, on a theory of premises liability.

The city moved for summary judgment on two grounds. First, the city contended that it owed Hameed no duty. Second, the city contended that Iowa Code section 613A.4(10) (1989) immunized it from liability. (Iowa Code chapter 613A was renumbered as Iowa Code chapter 670 in the 1993 Iowa Code.) The district court sustained the motion on the first ground and never reached the second ground. Later, by nunc pro tunc order, the court extended its ruling to the arresting officer and the police chief.

The case against Smith and Brown was tried to a jury. Brown successfully moved for directed verdict. She convinced the trial judge that there was not substantial evidence to establish a partnership between Smith and her. The jury returned a substantial verdict against Smith.

In her appeal, Hameed challenges the summary judgment ruling. She also challenges the directed verdict ruling.

We do not decide the duty issue. We conclude that section 613A.4(10) immunizes the city from any liability to Hameed. We therefore affirm the summary judgment ruling.

We also conclude that there was substantial evidence to submit the partnership issue to the jury. We therefore reverse the directed verdict ruling. We remand for new trial against Brown who successfully moved for the directed verdict.

I. *Background Facts.*

Roby and Hameed had intermittently lived together for about a year and a half before the events giving rise to this lawsuit. Twice during this time frame Hameed filed various charges against Roby, and the district court in each instance ordered Roby to have no contact with Hameed. Roby was found guilty on a charge of domestic abuse. Hameed refused to testify on the later charges of simple assault and misdemeanor theft because Roby allegedly threatened her with physical harm.

The couple separated in April 1991, when Hameed had the police evict Roby from their residence. Roby broke into Hameed's apartment several days later. Hameed called the police. The county attorney ultimately charged Roby with first-degree burglary. Officers located and arrested Roby two days later.

In a bond reduction hearing, the district court reduced Roby's bond and issued a no contact order prohibiting Roby from further contact with Hameed. Roby posted bond and was released from custody.

When Roby again appeared at Hameed's residence on May 9, she called the police. An officer was dispatched to Hameed's residence. He chatted briefly with Hameed, who declined to press charges. The officer then left.

Within minutes Roby was again at Hameed's door. Hameed again called police. This time three officers investigated and made a cursory search of the area, but they could not find Roby.

Roby's violation of the no contact order triggered further legal action by Hameed. The next day, the county attorney—at Hameed's request—sought and received a bench warrant for Roby's arrest.

On May 11 officer Dennis Mernka served Roby with the warrant at his mother's home. Mernka let Roby—unattended—go upstairs for clothes. On a second trip upstairs for

cigarette money, Roby fled through a second story bedroom window.

Several hours later, Hameed and Roby were both patrons at the Farmer's Exchange, a local bar. About an hour and half later, Hameed and her group went to Charlie Brown's Cafe. Roby followed them. Once inside the cafe, Roby twice tried to talk with Hameed but she refused. They were still in the cafe in the early morning hours of May 12 when Roby approached Hameed and stabbed her several times in the back.

## II. Background Proceedings.

In one count of her final pleading, Hameed alleged that Smith and Brown were partners doing business as Charlie Brown's Cafe and that they were negligent in failing to protect her as a business invitee from harm caused by the foreseeable misconduct of Roby.

In three separate counts, Hameed alleged the city and the two named officers were negligent in failing to (1) prevent the attack by Roby when they knew or should have known that such an attack was imminent, (2) provide adequate security for city residents, (3) enforce the closing hours required by the Iowa Alcoholic Beverage Control Act, administrative rules of the Iowa liquor control commission, and an order in effect between the cafe and the Iowa department of commerce, and (4) arrest Roby before the attack.

In each of these three counts, Hameed coupled these allegations of negligence with an allegation of a special relationship between the city and her. Each special relationship alleged was different. One was based on the order of the Iowa department of commerce demanding compliance from the cafe on hours of closing. Another was based on the no contact order in effect. The third was based on the bench warrant that officer Mernka tried to serve on Roby.

The city moved for summary judgment on two grounds. First, the city contended that it owed Hameed no duty because it was not in a "special relationship" with her. Second, the city contended that Iowa Code section 613A.4(10) immunized it from any liability arising from any harm caused by Roby. District Judge Allan L. Goode granted the mo-

tion on the first ground. Later the judge entered a nunc pro tunc order extending his summary judgment ruling to include the two named officers.

Hameed applied to us for interlocutory review. We denied the application in a single justice ruling.

The case proceeded to trial on the negligence claims against Smith and Brown. District Judge Louie F. Beisser granted Brown's motion for directed verdict at the close of Hameed's case. Judge Beisser found as a matter of law that Brown was not Smith's partner in the cafe.

The jury returned a verdict against Smith as owner of the cafe and for Hameed, awarding $55,000 in compensatory damages and $85,000 in punitive damages. The court then applied the mandatory provisions of Iowa Code section 668A.1(2)(b) to the punitive damage award. After payment of all costs and fees, the court awarded an amount not to exceed twenty-five percent of the $85,000 punitive damage award to Hameed.

## III. Summary Judgment for the City.

■ Our review of a summary judgment ruling is at law. Iowa R.App.P. 4. Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237. On appeal, our task is to determine whether a genuine issue of material fact exists and whether the district court correctly applied the law. *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 528 (Iowa 1995).

Hameed believes that she generated a genuine issue of material fact on the question whether the city had a "special relationship" with her that would subject the city to liability. The city alternatively counters that summary judgment in its favor was proper because (1) the city was not in a special relationship with Hameed and therefore owed her no duty, and (2) the city enjoys immunity under Iowa Code section 613A.4(10) from the kind of tort action alleged here.

We pass the city's first ground and decide the second one.

A. *Immunity under Iowa Code section 613A.4(10).* Iowa Code section 613A.4(10) immunizes a municipality from liability for

> [a]ny claim based upon an act or omission of an officer or employee of the municipality, whether by issuance of permit, inspection, investigation, or otherwise, and whether the statute, ordinance, or regulation is valid, *if the damage was caused by a third party,* event, or property *not under the supervision or control of the municipality,* unless the act or omission of the officer or employee constitutes actual malice or a criminal offense.

Iowa Code § 613A.4(10) (emphasis added).

■ The question boils down to whether Roby was under the supervision or control of the city when he stabbed Hameed. The answer turns on the meaning the legislature had in mind for the words "supervision" and "control." Because the statute defines neither term, we look to their common or dictionary meaning. *Krull v. Thermogas Co.,* 522 N.W.2d 607, 611 (Iowa 1994).

"Supervise" means the act of "oversee[ing] with the powers of direction and decision implementation of one's own or another's intentions." Webster's Third New International Dictionary 2296 (P. Gove ed. 1993).

"Control" means "to exercise restraining or directing influence over" or "have power over." *Id.* at 496.

■ Applying these definitions to the statute, we think liability can attach to the municipality only if the third party caused damage (1) while the municipality was overseeing the third party's conduct with the power to direct and decide the implementation of the third party's intentions, or (2) while the municipality was exercising restraining influence over the third party.

■ Summary judgment is proper when the facts are undisputed and the only question is the legal consequences flowing from those facts. *Ottumwa Hous. Auth. v. State Farm Fire & Casualty Co.,* 495 N.W.2d 723, 726 (Iowa 1993). Here the facts are undisputed that Roby stabbed Hameed some twelve hours after he escaped from officer Mernka. The facts are also undisputed that the city, at this time, was not overseeing Roby's conduct. The city had no power to direct or decide the implementation of Roby's intentions. Nor was the city exercising restraining influence over Roby. He was out of custody.

■ The legal consequences flowing from these undisputed facts is that Roby was not under the supervision or control of the city when he did damage to Hameed. *See Williams v. Bayers,* 452 N.W.2d 624, 626 (Iowa App.1990) (in determining municipality's immunity under section 613A.4(10), question whether building where plaintiff was injured was under municipality's supervision and control was a legal question) (held that the building was not under municipality's supervision and control because municipality had no ownership interest in building; fact that municipality had inspected the building, issued permits, and sent letter containing inspector's findings and compliance requirements did not constitute supervision or control over the person or premises as contemplated by the statute). The city is therefore immune from liability for any negligence alleged against the city. The district court properly sustained the city's motion for summary judgment and we therefore affirm its ruling.

IV. *Directed Verdict for Charlie Mae Brown.*

Brown moved for directed verdict at the close of Hameed's case, contending there was not sufficient evidence that she was a partner in Charlie Brown's Cafe. The district court agreed and granted the motion.

Hameed contends there was sufficient evidence to submit this issue to the jury. We find substantial evidence in the record to generate a fact question for the jury on this issue.

■ In ruling on a motion for directed verdict, we, like the district court, consider the evidence in the light most favorable to the party against whom the motion was made. Iowa R.App.P. 14(f)(2). The district court first determines whether such party has presented substantial evidence on each element of the claim or defense to determine

if a reasonable trier of fact could find for the party. *Poulsen v. Russell,* 300 N.W.2d 289, 296 (Iowa 1981). If there is such evidence the motion must be denied; conversely, if there is no such evidence the motion must be granted. *Valadez v. City of Des Moines,* 324 N.W.2d 475, 477–78 (Iowa 1982). Evidence is substantial if a fact finder could reasonably infer a fact from the evidence. *Johnson v. Interstate Power Co.,* 481 N.W.2d 310, 317–18 (Iowa 1992).

▮ Iowa Code section 544.6 defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." (Iowa Code chapter 544 was renumbered as chapter 486 in the 1993 Iowa Code.) A partnership has four elements: (1) an intent by the parties to associate as partners; (2) a business; (3) earning of profits; (4) co-ownership of profits, property, and control. *Chariton Feed & Grain, Inc. v. Harder,* 369 N.W.2d 777, 785 (Iowa 1985). The first element—an intent to associate as partners—is the crucial test of a partnership. *Id.* Such element need not be in writing but may be inferred from the conduct of the parties and the circumstances surrounding the transactions. *Thorp Credit, Inc. v. Wuchter,* 412 N.W.2d 641, 647 (Iowa App. 1987).

▮ Viewing the evidence in the light most favorable to Hameed, we conclude substantial evidence existed to submit the partnership issue to the jury. Smith's answer to the second amended petition admitted that he and Charlie Mae Brown were partners although Smith later amended the answer and denied the existence of a partnership. In tax returns before the stabbing, Smith acknowledged he and Charlie Mae Brown were partners. In an unrelated case, Smith gave deposition testimony that he and Charlie Mae Brown were partners. The cafe carried Charlie Mae Brown's name.

Although Brown denies there was a partnership and attempts to explain away the above admissions, we think reasonable minds could infer otherwise. The district court erred when it granted Brown's motion for directed verdict. We reverse and remand for a new trial against Brown only on the question whether she is Smith's partner in Charlie Brown's Cafe. If the jury finds that there was such a partnership, the district court shall vacate the judgment against Smith and enter a new judgment against Smith and Brown, jointly and severally, in the amount originally entered against Brown together with interest and costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**