**John C. CARLSON and Catherine Maurine Carlson, Husband and Wife, Appellants,**

v.

**Richard L. VONDRAK and Mary J. Vondrak, d/b/a Richmar Homes, a partnership, Appellees.**

**No. 95–42.**

Court of Appeals of Iowa.

Aug. 30, 1996.

A.J. Stoik of Klass, Hanks, Stoos, Stoic, Mugan & Villone, Sioux City, for appellants.

Bradford Kollars, Sioux City, for appellees.

Considered by CADY, P.J., and STREIT and VOGEL, JJ.

STREIT, Judge.

Plaintiffs John C. Carlson and Catherine Maurine Carlson (Carlsons) appeal a judgment of the district court awarding them monetary damages on their suit against the defendants, Richard L. Vondrak and Mary J. Vondrak, d/b/a Richmar Homes (Vondraks). We affirm in part and reverse in part.

### I.  Background

John Carlson is a retired chief financial officer of Iowa Public Service Company in Sioux City. Following his retirement in 1985, he and his wife, Catherine, decided to move to Estes Park, Colorado. In 1989 the Carlsons decided to move back to Sioux City. The Carlsons planned to buy a vacant lot and build their home and ultimately chose Richmar Homes as the builder. Richard Vondrak had been building homes under the Richmar name since the early 1980's. Vondrak worked with the Carlsons to select a building site and helped with the design of the home.

Vondrak prepared a contract setting forth the terms of the construction of the home and method of payment. This contract was signed by the Carlsons, Vondrak, and his wife, Mary. Pursuant to the terms of the contract, the Carlsons were to pay Vondrak $16,500 as a down payment for labor, materials, excavation, equipment rental, and other various expenses. As soon as work began on a full-time basis, Vondrak was to send a statement of expenses to the Carlsons every two weeks. The contract also provided for an eight percent general contractor's fee to be added to the price of all materials, subcontractor costs, and labor. On July 16, 1990, Catherine Carlson made the initial payment to Vondrak. Vondrak began preparing the lot. The Carlsons remained living in Colorado.

Vondrak sent the first formal statement to the Carlsons in September 1990. The statement, however, was delayed in the mail, and

the parties agreed to devise a new system of accounting. They agreed that Vondrak would telephone the Carlsons regarding the amount he needed for continued construction. The Carlsons in turn would inform their bank in Sioux City to issue a check to Richmar Homes for the amount of the statement. Vondrak would then send the statement to the Carlsons in Colorado.

Throughout the winter and early spring of 1991, Mrs. Carlson was Vondrak's main contact regarding the design of the house and materials used. Mrs. Carlson expressed satisfaction with the progress and construction of the home. The Carlsons visited the worksite on numerous occasions when visiting Sioux City. Mr. Carlson, however, began to express doubt regarding the billing system. Carlson requested an itemization of expenses on several occasions, but did not receive them. When Vondrak failed to meet the completion date of April 1, 1991, Mrs. Carlson told Vondrak not to worry about the deadline. Mr. Carlson, however, expressed displeasure with the failure to meet the deadline.

In late May 1991, Mr. Carlson and Vondrak began having disagreements regarding billing and the general state of construction of the home. On May 28, 1991, Mr. Carlson asked Vondrak to return the initial payment check of $16,500. Vondrak agreed to send the check, but made it clear Carlson should not cash it without giving him notice because he had already spent a large portion of it. Carlson, however, had already sent the check through. Vondrak stopped payment on the check. After conducting his own audit of the billing statements, Vondrak sent the Carlsons a check in the amount of $2278.64 for overcharges and other billing errors. Mr. Carlson demanded Vondrak pay him the $16,500. After further negotiations broke down, Carlson filed the present action.

Following trial, the district court entered judgment in favor of the Carlsons for $12,595.22 plus interest and costs. Included in that award were damages based on the Carlsons' claims of breach of contract and negligence, but no damages on the Carlsons' claims of fraud, violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) statute, and punitive damages. The Carlsons appealed.

The Carlsons raise five points on appeal. First, the Carlsons contend the district court erred in holding Richmar was not a partnership. Second, the Carlsons contend the district court erred in finding the Vondraks had not committed fraud. Third, the Carlsons maintain they should be reimbursed $8316.21 from the initial payment of $16,500 because Vondrak did not use the funds for their intended purpose. Fourth, the Carlsons assert they are entitled to damages for faulty construction. Fifth, the Carlsons claim they are entitled to punitive damages.

Our scope of review is for errors of law. Iowa R.App.P. 4.

## II. Partnership

■ The Carlsons' first claim is that Richmar Homes is a partnership comprised of Richard and Mary Vondrak. As a partner, the Carlsons argue, Mary Vondrak should be held jointly and severally liable. The district court found that "Richmar Homes is not a partnership," and that Mary Vondrak was not liable.

A partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." Iowa Code § 486.6 (1995). A partnership has four elements: "(1) an intent by the parties to associate as partners; (2) a business; (3) earning of profits; (4) co-ownership of profits, property, and control." *Hameed v. Brown*, 530 N.W.2d 703, 708 (Iowa 1995). The parties' intent is "the crucial test of a partnership." *Id.*

■ The Carlsons first argue that intent sufficient to satisfy this crucial test was demonstrated by an admission from Mr. Vondrak during deposition. The transcript reads as follows:

Q: Is your wife Mary an associate with you in the operation of the business [Richmar Homes] at all?

A: As a wife and business partner, yes.

When allowed an opportunity to explain, Mr. Vondrak clarified that Mrs. Vondrak was an associate in his business; he was using "partner" in a generic sense, not in a technical one. Although the intent element "need not be in writing but may be inferred from the conduct of the parties," *Hameed*, 530

N.W.2d at 708, merely reciting the word "partner" does not act as a magic spell to instantly create a partnership. Vondrak's "admission" did not exhibit the intent necessary to form a partnership. There is not sufficient further evidence in this case to prove the Vondraks' intent to form a partnership. The district court correctly ruled that the facts of this case did not contain sufficient evidence of the Vondraks' intent to form a partnership.

The Carlsons, however, have pointed out, apparently for the first time on appeal, that the Vondraks admitted they were a partnership in both their answer and their answer to the Carlsons' amended petition. The second paragraph in the Carlsons' petition reads: "Defendants are ... partners in an Iowa general partnership known as Richmar homes." The Vondrak's answer admits that paragraph. Identical language appears in the Carlsons' amended petition, and was also admitted by the Vondraks. Even though the record does not contain sufficient evidence to demonstrate the Vondraks' intent to form a partnership, the Vondraks are bound by their admission. *See, e.g., Welter v. Heer,* 181 N.W.2d 134 (Iowa 1970) (admission of existence of oral contract in answer binding on defendants).

We therefore reverse the district court's ruling and find that, for purposes of this action, Richard and Mary Vondrak are partners in an Iowa general partnership known as Richmar Homes, and Mary Vondrak is jointly and severally liable for the judgment in this action.

### III. Fraud

The Carlsons' second claim is that the trial court erred in finding that Richard Vondrak did not commit fraud in billing for supplies, materials, and labor.

■ To recover in an action for fraud, the plaintiff must prove: (1) a material misrepresentation, (2) made knowingly, (3) with the intent to induce the plaintiff to act or refrain from acting, (4) justifiable reliance, and (5) damages. *Air Host Cedar Rapids, Inc. v.* *Cedar Rapids Airport Comm'n,* 464 N.W.2d 450, 453 (Iowa 1990).

■ The Carlsons argue that the quantity of mistakes in the Richmar invoices is proof of Vondrak's intent to commit fraud. The Carlsons cite no authority in support of this statement outside of an assertion that "[o]nly a fool or an idiot could have made so many mistakes, so consistently, by accident." We disagree. The district court did "not find that the statements or invoices submitted by Mr. Vondrak contained intentional errors or that Mr. Vondrak knew the charges were false. If Mr. Vondrak could be faulted, it would be for spending too much of his time, effort and energy on construction and design details." The district court also found "the testimony of Richard L. Vondrak to be credible." The district court's finding was a finding of fact, and it is supported by substantial evidence. Our scope of review is for errors of law. We are bound by this finding and must deny the Carlsons' request to try the case anew. Iowa R.App.P. 14(f)(1).

The district court's finding that Richard Vondrak did not have sufficient intent to commit fraud is affirmed.

### IV. Reimbursement of Initial Payment

■ The Carlsons' third claim is that the district court erred in allowing them to recover only a portion of their initial payment to Richmar Homes. The contract provides for an initial payment of $16,500 to "be used for labor, materials, excavation, equipment rental, etc. during the initial start-up phase of the project." Richmar claimed eighteen payments totaling $13,729.45, plus a claim for contractor's fees totaling $2,738.08 from the initial payment. The Carlsons accepted expenditures totaling $8,183.79 from this amount, and contested four payments totaling $5,545.66. The district court found that expenditures totaling $3500.26 should be allowed from the four payments the Carlsons contested. The district court held that the Carlsons were entitled to a refund of $3881.23 from their initial payment of $16,-500.[1] This finding of fact is supported by

1. This total is reached as follows: The amount the Carlsons accepted from the initial payment ($8183.79) plus the amount allowed that the

Carlsons did not accept ($3500.26) equals $11,-684.05. The 8% general contractor's fee on that

substantial evidence. As our review is for errors of law, we are bound by this finding.

The district court's finding that the Carlsons were entitled to a refund of $3,881.23 from their initial payment is affirmed.

### V. Faulty Workmanship

■ The Carlsons' fourth claim is that the district court erred in failing to award $25,750 in damages for faulty workmanship on the foundation wall.

During the construction process, a slight inward bowing of the foundation wall occurred. Through several techniques, Richmar was able to remedy the problem. A collateral problem, some cracks in the block and mortar, developed. At trial, the Vondraks presented a construction expert who testified that there was no structural damage and that the cracks in the block and mortar were merely cosmetic. The Carlsons presented no expert testimony on this matter, instead relying solely on Mr. Carlson's unsubstantiated testimony that the cracks would cost $750 to repair and would diminish the value of the house by $25,000.

The district court reported in its findings of fact that the Carlsons failed in their burden of proof to establish any claim for foundation damage. The trial court heard the testimony of both witnesses and found the testimony of the Vondrak's building engineer more convincing than Mr. Carlson's speculations. In a review of a law action, we are prohibited from weighing the credibility of witnesses. *Grinnell Mut. Reins. Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988).

The district court's ruling that the Carlsons failed to establish their claim for foundation damage is affirmed.

### VI. Punitive Damages

The Carlsons' final contention is that the district court erred in not awarding punitive damages.

■ To receive punitive damages, one of the elements a plaintiff must prove is that the defendant's conduct was willful. *Beeman v. Manville Corp. Asbestos Fund*, 496 N.W.2d 247, 255 (Iowa 1993). The Carlsons rely on their allegations of Richard Vond-

rak's fraud to establish willfulness. As noted above in section III of this opinion, we affirm the district court's finding that no fraud existed. Because fraud was the sole basis upon which the Carlsons' claim for punitive damages rested, their claim is denied.

The district court's ruling that no punitive damages were awarded is affirmed.

### VII. Conclusion

The section of the district court's order ruling that Richmar Homes is not a partnership is reversed. The following sections of the district court's order are affirmed: Richard Vondrak did not commit fraud; the Carlsons should be reimbursed $3,881.23 from the initial payment; the Carlsons are not entitled to damages for faulty construction of the foundation wall; and the Carlsons are not entitled to punitive damages.

The court notes the following: the mammoth appendix submitted on this appeal is an outrageous waste of resources that adds nothing to the quality of the appeal and does nothing to clarify this case. The appendix contained over 1000 pages and ran up over $1300 in printing costs alone. Had our review been de novo, this appendix may have been appropriate. Our review, however, was for errors of law. There was no reason for the appendix to be this lengthy. *See* Iowa R.App.P. 15 (appendix should contain "relevant *portions* of the pleadings, transcript, ....") (emphasis added). Volume II of the appendix, for example, contained pages 415 through 888. Of the 473 pages, a total of 72 were referenced by the parties in their three briefs. A similarly meager ratio existed for volume I of the appendix.

The costs of this appeal are assessed to the Carlsons.

**AFFIRMED IN PART AND REVERSED IN PART.**

---

total is $934.72. Thus, Richmar properly spent

$12,618.77 of the $16,500 initial payment.