# IN THE COURT OF APPEALS OF IOWA

No. 22-1941
Filed December 4, 2024

**NORTHWEST BANK & TRUST COMPANY,**
Plaintiff-Appellant,

**vs.**

**PERSHING HILL LOFTS, LLC, JOHN M. CARROLL, and JOHN G. RUHL,**
Defendants-Appellees.
_____

Appeal from the Iowa District Court for Scott County, Tom Reidel (summary judgment) and Meghan Corbin (trial), Judges.

A plaintiff appeals the district court's grant of summary judgment on its breach-of-contract claim and the court's denial of its motion for a new trial after an adverse jury verdict on its fraudulent-misrepresentation claims. **REVERSED AND REMANDED.**

David T. Bower of Nyemaster Goode, P.C., Des Moines, and Candy K. Pastrnak of Pastrnak Law Firm, P.C., Davenport, for appellant.

Ian J. Russell of Lane & Waterman LLP, Davenport, for appellees.

Heard by Bower, C.J., and Schumacher and Langholz, JJ., but decided by Schumacher, P.J., Langholz, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**LANGHOLZ, Judge.**

Does a simple—one might even say bare bones—agreement to seek financing exclusively from one lender in return for the lender expending resources on due diligence on the loan become unenforceable just because it is included in a longer document that describes tentative financing terms that everyone agrees cannot be enforced? The district court said yes—holding that the exclusivity clause is unenforceable as part of a single invalid agreement to agree. And so, the court granted summary judgment and dismissed Northwest Bank & Trust Company's breach-of-contract claim against Pershing Hill Lofts, LLC and two of its managing members.

But the exclusivity clause is not an agreement to agree. And its obligations do not become unenforceable merely because other clauses in the document are. Neither does the exclusivity clause have any condition precedent. Nor is it too indefinite to be enforced. We thus reverse the district court's grant of summary judgment and remand for further proceedings on Northwest Bank's breach-of-contract claim.

We also agree that Northwest Bank is entitled to a new jury trial on its related fraudulent-misrepresentation claims. The district court excluded the signed financing proposal and any reference to it or the exclusivity clause—mainly due to potential prejudice because the court had held it was an invalid contract. With that basis for the exclusion eroded, and the breach-of-contract claim revived, Northwest Bank should have the chance to get a verdict on all its claims with this highly relevant evidence. So we reverse and remand on the fraudulent-misrepresentation claim as well.

## I.  Background Facts and Proceedings

In early 2012, Pershing Hill bought a building in Davenport with the goal of renovating the building into apartments.  Northwest Bank first became formally involved in the property about a year later when it provided refinancing for Pershing Hill's acquisition loan.  In the summer of 2014, Pershing Hill began discussions with Northwest Bank about obtaining additional financing for the renovation.  And about a year later, they both signed a five-page document titled "Proposed Financing for Pershing Hill Lofts, LLC, Summary of Principal Terms."

Most of the document summarizes substantive terms of the proposed transaction.  Among those terms are that Pershing Hill will obtain and sell various state and federal tax credits, including a grayfield tax credit, as a part of the financing for the renovation.  *See* Iowa Code §§ 15.291–.295, 422.11V (2015) (providing a redevelopment income tax credit for grayfield sites and other properties).  Under a "Due Diligence" heading, the document also sets out twenty items that Northwest Bank "will need as part of necessary due diligence, and as a condition to making" its financing available.  One of those due-diligence items is "Grayfield Tax Credit award documentation."  And under a heading "Expenses," the document provides that "[n]otwithstanding whether [Northwest Bank] funds the loans described herein," Pershing Hill must reimburse Northwest Bank "for all reasonable out-of-pocket due diligence, legal and documentation expenses incurred in connection with the transaction."

The document concludes with a final unlabeled paragraph—key to this case—that we, like the parties, will refer to as the exclusivity clause:

> This is a summary of terms that may lead to a commitment to lend, subject to satisfactory completion of due diligence, and a subsequent Commitment Letter. Acceptance below assures [Northwest Bank] of [Pershing Hill's] exclusive consideration as "Lender" in exchange for the expense in time and travel of the proposed due diligence. This Summary of Principal Terms will expire if not signed by September 4, 2015.

The document is dated August 31, 2015, and signed first by Northwest Bank's president and CEO as the author of the proposal.[1] And under a heading "Accepted," it was signed on behalf of Pershing Hill by its two managing members.

About two months after Pershing Hill accepted the financing proposal, it suffered a setback—learning that it again did not receive a grayfield tax credit in that fall award cycle. But Pershing Hill informed Northwest Bank that its lobbyist was "confident from his contacts" with the awarding state officials that it would "receive our award next cycle, in March/April."

Over the next several months, the parties continued to work toward finalizing the financing and closing the deal. The managing members of Pershing Hill made various statements to Northwest Bank that led it to believe that it was still the exclusive lender on the project. But Pershing Hill was actually contacting other potential lenders about financing.[2] In late April or early May 2016, Pershing Hill agreed to financing terms with another bank. And in May, Pershing Hill informed Northwest Bank that it would be going with another lender to finance the renovation project.

---

[1] His signature appears as if signing a letter, after the valediction: "Thank you for the opportunity to be of service to you. Sincerely, . . . ."

[2] Indeed, one of the managing members wrote during this time he wanted to explore other lenders "so we can shitcan [Northwest Bank] if possible."

So Northwest Bank sued Pershing Hill and its two managing members. Northwest Bank claimed that Pershing Hill breached the exclusivity clause. And it sought to recover its damages caused by this breach. Northwest Bank also claimed that both managing members made fraudulent misrepresentations that Northwest Bank was still the exclusive lender at the same time that Pershing Hill was actually looking for a new lender.[3]

Pershing Hill moved for summary judgment on the breach-of-contract claim, arguing that the entire accepted financing proposal—including the exclusivity clause—was an unenforceable agreement to agree. The district court agreed with Pershing Hill and granted summary judgment, dismissing the breach-of-contract claim in September 2018. The court held that all the terms except for the exclusivity clause "fail for a lack of present intent to be bound." And so, it held that the exclusivity clause "must also fail" because if "every other term in the Financing Proposal fails, the Exclusivity Clause is merely an agreement to negotiate further terms in good faith," and "agreements to negotiate in good faith toward an ultimate agreement are not enforceable." Alternatively, the court held that even if the financing proposal was an enforceable contract, Pershing Hill was required to obtain the grayfield tax credit as "a condition precedent of the other terms." And when Pershing Hill failed to do so and Northwest Bank did not waive that non-occurrence, the contract was no longer enforceable. Northwest Bank did not seek interlocutory review of the summary-judgment ruling.

---

[3] Northwest Bank also brought claims of negligent misrepresentation against the managing members. But the district court granted summary judgment on those claims, and that ruling has not been appealed.

Northwest Bank's remaining fraudulent-misrepresentation claims were tried to a jury in July 2022. At the start of trial, the district court granted Pershing Hill's motion in limine, excluding the financing-proposal document and any reference to that document in any other exhibit or testimony. The court reasoned that the summary-judgment ruling "is a ruling that I have to follow in this case, and while I understand that this agreement is the foundation of your case, the Court is saying that that agreement was out the window." And the court concluded that if Northwest Bank could bring in the agreement "which the Court has already ruled is not a contract, it is going to prejudice the jury, because the jury is going to think that this was an active agreement and the Court has already ruled it was not." So the court explained that while it was permissible for Northwest Bank to present evidence of the parties' states of mind about whether Northwest Bank was the exclusive lender on the project, Northwest Bank could not "present to the jury the idea that there was a contract that bound the defendants to that state of mind" or "reference any signed agreement."

Because Northwest Bank viewed this ruling as going to "the heart of [its] misrepresentation case"—including whether it was "justified in relying on the representation" and whether the representation "was material"—Northwest Bank asked for a continuance so that it could seek interlocutory review of the ruling.[4]

---

[4] Northwest Bank even expressed an openness to a continuance so the court could consider whether to grant summary judgment on its misrepresentation claims without the excluded evidence as an "efficient way to preserve the error on all of the matters and then take it up on appeal." The court declined to do so, reasoning that "it sounds like you have other evidence which potentially could create a genuine issue of material fact" and that it did not want to "get into a three-hour hearing today, ultimately rule that we have enough to proceed to trial, and now I don't have a jury picked" and "a four-day trial has now turned into a six-day trial."

The district court declined to grant a continuance, explaining its view that it "didn't make any different ruling" than the summary-judgment ruling "almost four years ago" and it had "a room full of people who are here today for the trial." After five days of trial, the jury returned a verdict finding that Northwest Bank failed to prove its fraudulent-misrepresentation claims.

Northwest Bank moved for a new trial arguing, as relevant here, that the court erred by excluding any reference to the parties' exclusivity agreement in the accepted financing proposal. The court denied the motion, mainly reasoning that permitting the evidence would have "been in direct contradiction to" the summary-judgment ruling, which Northwest Bank did not seek to reverse through an application for interlocutory appeal. The court also held that the evidence "would have been more prejudicial than probative." Northwest Bank now appeals.

## II. Grant of Summary Judgment on Breach-of-Contract Claim

Northwest Bank first challenges the district court's dismissal of its breach-of-contract claim on summary judgment. It argues that the district court erred in holding that the exclusivity clause on which the claim is based is an unenforceable agreement to agree. And it argues that the court's alternative holding is also error because the exclusivity clause did not have a condition precedent. We agree on both points.

"[A]n agreement to agree is not a contract." *Whalen v. Connelly*, 545 N.W.2d 284, 293 (Iowa 1996). This is because "understandable or ascertainable terms are necessary ingredients for an enforceable contract." *Air Host Cedar Rapids, Inc. v. Cedar Rapids Airport Comm'n*, 464 N.W.2d 450, 453 (Iowa 1990). So if parties agree to a term that "is subject to future negotiations and agreement

by both parties"—a "basis to be settled in the future"—the term is unenforceable. *Id.* And thus, our supreme court has held that a provision in an airport lease agreement granting "the first right to lease space in the new Terminal" but providing "the terms and conditions of such lease and license shall be as mutually agreed" was unenforceable as a matter of law. *See id.*

But when an unenforceable agreement-to-agree term is part of an otherwise valid contract, other terms in the contract may still be enforced. *See id.* at 452. So in that same airport-lease-agreement case, the supreme court affirmed an award of damages for breach of another provision in the agreement promising to pay the lessee up to $20,000 of its expenses planning for space in the new terminal if it did "not obtain leased premises in [the] New Airport Terminal, or is otherwise not allowed to provide services in [the] New Airport Terminal." *Id.* Indeed, it has long been recognized that "[g]enerally, when a portion of an agreement is deemed invalid, the remaining portions of the agreement can be enforced as long as they can be separated from the illegality." *Miller v. Marshall Cnty.*, 641 N.W.2d 742, 751–52 (Iowa 2002); *see also Casady v. Woodbury Cnty.*, 13 Iowa 113, 117 (1862) ("[I]f one gives a good and valid consideration, and thereupon another promises to do two things, one legal and the other illegal, he shall be held to do that which is legal, unless the two are so mingled and bound together that they cannot be separated, in which case the whole promise is void . . . ." (cleaned up)).

With these legal principles in mind, we review the district court's grant of summary judgment for corrections of errors of law. *See Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 500 (Iowa 2013). Interpreting a written contract is typically a legal question. *See id.* "[W]e examine the record in the light most

favorable to" Northwest Bank as "the nonmoving party."  *Id.* at 501.  And if we encounter a material factual dispute, then summary judgment should not have been granted.  *See id.*

Here the parties agree that the proposed financing terms that make up the first four pages of the accepted financing proposal are not enforceable.  And Northwest Bank does not seek to force Pershing Hill to obtain financing from it.  Rather, Northwest Bank only seeks to enforce the exclusivity clause in which the parties agreed that Northwest Bank would have Pershing Hill's "exclusive consideration as 'Lender' in exchange for the expense in time and travel of the proposed due diligence."

This exclusivity clause is not an agreement to agree.  It does not bind Pershing Hill to ultimately obtain financing from Northwest Bank.  It prohibits Pershing Hill from seeking financing from other lenders while the parties are engaged in due diligence.  Such an obligation is not "subject to future negotiations and agreement by both parties" or need to be fleshed out on a "basis to be settled in the future."  *Air Host Cedar Rapids*, 464 N.W.2d at 453.  It is enforceable.[5]

And the exclusivity clause does not become unenforceable merely because it is included with other proposed financing terms that are not enforceable.  The exclusivity clause is distinct from—not intertwined with—the financing terms and is thus separately enforceable.  *See Miller*, 641 N.W.2d at 751–52; *Air Host Cedar Rapids*, 464 N.W.2d at 452.  Indeed, there is no real question whether the exclusivity clause is wrapped up in other obligations because the financing terms

---

[5] The issue of what damages are available from this enforcement is not before us in this appeal.

do not even purport to create enforceable obligations.  The proposal's text clarifies those pages of text are merely a "summary of terms that *may* lead to a commitment to lend" and that any commitment would be "subject to satisfactory completion of due diligence, and a subsequent Commitment Letter."  (Emphasis added.)  So rather than enforcing only part of an otherwise invalid agreement, it may be more accurate to say we are enforcing the main provision of an entirely valid, albeit limited, agreement.[6]

Pershing Hill argues that the exclusivity clause alone does not have sufficiently definite terms to be enforceable.  But a contract need not be lengthy or complex to be valid.  We need only to understand "the duty of each party and the conditions of performance."  *Royal Indem. Co. v. Factory Mut. Ins.*, 786 N.W.2d 839, 846 (Iowa 2010).  And the exclusivity clause gives us that understanding.  Pershing Hill promised to give Northwest Bank its "exclusive consideration as 'Lender.'"  And "in exchange," Northwest Bank would spend its "time and travel" engaged in "the proposed due diligence."  This promise to spend its resources on due diligence also provides the consideration for the contract.  And the parties' mutual assent to these terms is shown by the signatures agreeing to these terms.

---

[6] Courts in other jurisdictions have also enforced limited provisions in letters of intent or term sheets that make binding promises even where the rest of the document is an unenforceable agreement to agree.  *See, e.g., Logan v. D.W. Sivers Co.*, 169 P.3d 1255, 1258 (Or. 2007) (enforcing three provisions, including a non-solicitation provision, much like the exclusivity clause); *Weigel Broadcasting Co. v. TV-49, Inc.*, 466 F. Supp. 2d 1011, 1017–19 (N.D. Ill. 2006) (applying Illinois law to enforce exclusivity provision while finding rest of the letter-of-intent was not a binding purchase agreement); *Clark v. Nepveu*, No. 2005-0923, 2007 WL 9619427, at *1 (N.H. Feb. 16, 2007) ("While the letter of intent could not have created an enforceable purchase and sale agreement, the 'standstill' provision was sufficiently definite and certain as to create a more limited agreement to negotiate exclusively with one another over the potential transaction.").

Pershing Hill correctly notes that the exclusivity clause contains no durational period for its obligations. But that omission does not make a contract too indefinite to enforce. When a contract lacks an express duration, a court will imply one "from the nature and circumstances of the contract," if possible. *Shelby Cnty. Cookers, L.L.C. v. Util. Consultants Int'l, Inc.*, 857 N.W.2d 186, 191 (Iowa 2014). And if no "implied term can be found, the court will generally construe the contract as terminable at will." *Id.* (cleaned up). We need not resolve whether this contract has an implied duration or is terminable at will since neither party had argued that the contract terminated by its implied terms or by one party giving notice of an at-will termination before the alleged breach. The important point for now is that the lack of an express durational term does not give us a basis to affirm the district court's holding that the exclusivity clause is unenforceable.

Nor can we affirm based on the district court's alternative holding that the exclusivity clause was made unenforceable by the nonoccurrence of a condition precedent. *See Khabbaz v. Swartz*, 319 N.W.2d 279, 283 (Iowa 1982) ("Conditions precedent are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." (cleaned up)). The exclusivity clause does not have a condition precedent. True, the due-diligence term of the financing proposal states that Northwest Bank "will need" "Grayfield Tax Credit award documentation" "as part of necessary due diligence, and as a condition to making" its financing available. But by its plain text, this provision does not put any condition on Pershing Hill's promise to work exclusively with Northwest Bank in return for

Northwest Bank's due-diligence efforts. It merely sets out what Pershing Hill would be expected to provide for completion of due diligence and to obtain the financing. Northwest Bank's right to enforce the exclusivity clause is not conditioned on receiving the grayfield tax credit award documentation from Pershing Hill.

What's more, a contrary interpretation—in addition to flouting the text— would not make sense. The exclusivity clause binds the parties to act during the due-diligence phase—Pershing Hill to work exclusively with Northwest Bank as the lender on the project and Northwest Bank to devote its time and internal resource to the due diligence. If the twenty items, including the grayfield award documentation, that Pershing Hill needed to provide to Northwest Bank as a part of the due diligence were all conditions precedent to the clause, it could never have any effect during the only time during which the clause's terms could apply, rendering it meaningless and negating its valuable commercial purpose. *See generally Feldman v. Allegheny Int'l, Inc.* 850 F.2d 1217, 1221 (7th Cir. 1988) (discussing the benefits to both parties of letters of intent in complex commercial transactions).

Because the exclusivity clause is not an unenforceable agreement to agree and is not subject to a condition precedent, we cannot say that Northwest Bank's breach-of-contract claim fails as a matter of law. And so, we reverse the district court's grant of summary judgment on Northwest Bank's breach-of-contract claim and remand for further proceedings.

### III. Denial of New Trial on Fraudulent-Misrepresentation Verdict

Northwest Bank also argues that it is entitled to a new trial on its fraudulent-misrepresentation claims because the district court excluded the signed financing

proposal and any reference to the exclusivity clause as a binding agreement. While not expressly stating the rule of evidence under which it excluded this evidence, it appears the court did so under rule 5.403. The court explained in denying Northwest Bank's motion for a new trial that admitting the evidence "would have been more prejudicial than probative" and "in direct contradiction to the [summary-judgment] ruling previously entered by the Court." And it further elaborated in its original ruling on Pershing Hill's motion in limine that the prejudice also rested on that summary-judgment ruling—reasoning that if Northwest Bank could introduce evidence of the exclusivity clause "which the Court has already ruled is not a contract, it is going to prejudice the jury, because the jury is going to think that this was an active agreement and the Court has already ruled it was not."

As relevant here, rule 5.403 lets a district court "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Iowa R. Evid. 5.403. Because it allows courts "to exclude *relevant* evidence," they "should apply the rule sparingly." *Williams v. Hedican*, 561 N.W.2d 817, 832 (Iowa 1997). We review the exclusion of evidence under rule 5.403 for abuse of discretion. *See id.* at 822, 832 (reversing exclusion of expert testimony under, among other grounds, rule 5.403 as an abuse of discretion). And we will reverse when the grounds for the court's exclusion of evidence are "clearly untenable or to an extent clearly unreasonable" and the error affects a substantial right of the appealing party. *Mohammed v. Otoadese*, 738 N.W.2d 628, 632 (Iowa 2007) (cleaned up).

We need not decide whether excluding the evidence could have been upheld even if the district court had been correct in its summary-judgment ruling

that the exclusivity clause is unenforceable. *But see Lauer v. Banning*, 118 N.W. 446, 449 (Iowa 1909) (reversing district court's exclusion of an invalid contract signed by the parties because the "contract, although invalid and illegal, should have been admitted as bearing upon the truthfulness of plaintiff's testimony and upon her character"). Because we have reversed that summary-judgment ruling that was the load-bearing wall supporting this evidentiary ruling, the evidentiary ruling also cannot stand. Its reasoning is now untenable. The unfair prejudice or confusion relied on by the district court cannot outweigh the probative value of the evidence because the jury would not be mistaken in thinking the exclusivity clause is a binding contract. And given the highly probative value of a written promise of exclusivity by Pershing Hill to proving whether Northwest Bank justifiably relied on the later alleged misrepresentations, excluding the evidence clearly affects Northwest Bank's substantial rights. *See Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 736 (Iowa 2009) ("Justifiable reliance is an essential element of a claim for fraud."); *cf. Lauer*, 118 N.W. at 449 (holding that exclusion of a contract that had "bearing upon the issues in the case" was "manifestly prejudicial"). We thus reverse the district court's judgment on Northwest Bank's fraudulent misrepresentation claims and remand for a new trial.

**REVERSED AND REMANDED.**